**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re | ) |
| ESTABLISHMENT INSPECTION OF: | ) |
| | ) Case No. 21 M 499 |
| ANTHONY MARANO COMPANY, | ) |
| 3000 S. Ashland Avenue, #100, | ) Magistrate Judge Gabriel A. Fuentes |
| Chicago, IL 60608 | ) |

## MEMORANDUM OPINION AND ORDER

The Seventh Circuit has yet to speak definitively on whether employers subject to administrative inspection warrants have a constitutional pre-execution right to Article III judicial review of the validity of such warrants under the Fourth Amendment. In this matter, Anthony Marano Company ("Anthony Marano") asserts that it has such a right, in filing an emergency motion to stay and unseal ("Motion to Stay"; D.E. 4) an administrative inspection warrant (D.E. 1) issued by this Court, per the undersigned magistrate judge, on July 28, 2021, on application by the Secretary of the U.S. Department of Labor ("the Secretary"). The Court granted Anthony Marano a temporary, *de facto* stay of execution of the warrant on August 4, 2021 while the Court considered the Motion to Stay, ordering Anthony Marano not to alter, destroy, or tamper with evidence. (D.E. 5.) The Court heard oral argument on the Motion to Stay on August 6. Anthony Marano then moved to quash the warrant. Motion to Quash Administrative Inspection Warrant ("Motion to Quash"; D.E. 18.) This Memorandum Opinion and Order addresses Anthony Marano's Motion to Stay and Motion to Quash.

## FACTS

The Secretary asserts that it first learned of a March 2021 accident at Anthony Marano's facility on the South Side of Chicago when an employee of the company contacted the Occupational Safety and Health Administration ("OSHA") by telephone on July 7, 2021.

Response to Emergency Motion to Stay Warrant and Unseal Application and Cross Motion for Certification of Contempt ("Resp."; D.E. 12) at 2; Application for Inspection Warrant ("Warrant Application"; D.E. 1) ⁋ 3. Included in the Warrant Application was an OSHA form reflecting the agency's receipt of the complaint on July 7, and indicating that on the same day, OSHA called the "source" for "more info" and "[d]iscussed incident/injury." *Id.*, Exh. A. The first page of the OSHA complaint form summarized the complaint as follows:

> On or about March 26, 2021, at approximately 12:30 PM, Driver #1 was cleaning up debris in the loading dock area when Driver #1 was struck in the back by a forklift, which was operated in reverse. Driver #1's head hit the vertical side post of the rear end of a trailer. Driver #1 was transported by EMS to a local hospital and treated for head, neck, and back injuries.

*Id.* The Warrant Application's supporting affidavit reiterated the complaint summary in the same words used on the first page of the complaint form. *Id.* ⁋ 4. The affidavit further related that on July 9, the OSHA agent and affiant visited the Anthony Marano facility in an attempt to conduct a warrantless inspection but was told to leave immediately. *Id.* ⁋ 9. The affidavit alleged that an attorney for Anthony Marano advised the agent in a telephonic conversation on speaker phone "that [OSHA] would need a warrant to conduct the inspection." *Id.* ⁋ 10. The Secretary, in his opposition to the Motion to Stay, asserts that during this encounter, an OSHA supervisor told the Anthony Marano representatives over the speaker phone that the inspection was intended to investigate a complaint that OSHA had received about a forklift accident from March 2021. Resp., Exh. A ⁋ 4. Having been refused entry, the agent left the Anthony Marano premises. *Id.* On July 28, the Secretary then presented the Warrant Application to the undersigned magistrate judge.

The Warrant Application further stated that OSHA has in place an "emphasis program," effective on October 1, 2018, for "powered industrial vehicles," which include forklift trucks. Warrant Application ⁋⁋ 6-7. The OSHA emphasis program calls for inspection upon "***all*** serious

complaints and referrals, alleging a hazard or a condition that may be a violation of the powered industrial truck standard or a potentially fatal 'struck/caught/fall hazard' associated with the operation of a powered industrial vehicle ...." *Id.* ¶ 7 (emphasis in original). The emphasis program, which was attached to the Warrant Application, further provides, in pertinent part:

> Any referral or complaint classified by OSHA as "serious" which alleges a hazard or a condition that may be a violation of the powered industrial truck standard or a potentially fatal "struck/caught/fall hazard" associated with the operation of a powered industrial vehicle (e.g., struck by falling load, struck against, caught between, caught in, or fall hazard) in general industry or construction will be activated for inspection. Additionally, any ongoing inspection where powered industrial vehicles are observed in use will be expanded to evaluate possible violations of the powered industrial truck standard. A hazard is determined by OSHA to be serious if there is substantial probability that death or serious physical harm could result from an existing condition, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use. Inspections meeting the criteria set forth in this LEP will also evaluate safety and health hazards in or around loading docks or other designated loading and unloading areas where powered industrial trucks are in use (Including, but not limited to: loading docks, shipping and receiving areas, yard areas, and other locations where vehicles are loaded and unloaded).

*Id.*, Exh. C at 3. The emphasis program further provides:

> The [OSHA] Area Offices will identify and schedule for inspection all serious complaints and referrals, alleging a hazard or a condition that may be a violation of the powered industrial truck standard or a potentially fatal "struck/caught/fall hazard" associated with the operation of a powered industrial vehicle (e.g., struck by falling load, struck against, caught between, caught in, or fall hazard) in general industry or construction. The inspection will address all complaint items, all aspects of the powered industrial truck standard, powered industrial vehicles and associated hazards, collection of OSHA 300 data and hours worked for the previous three years plus the current year, an evaluation of the employer's safety and health program in accordance with the FOM, an evaluation of safety and health hazards at the employer's loading dock or other designated loading and unloading areas where powered industrial vehicles are used (including loading docks, shipping and receiving areas, yard areas, and other locations where vehicles are loaded and unloaded.)

*Id.*, Exh. C at 5-6.

3

The Warrant Application further cited 29 C.F.R. § 1910.178, "specifically the regulations on safety requirements relating to operation and maintenance of powered industrial vehicles, including forklifts." (*Id.* ⁋ 5.) These regulations include requirements that operators be competent to operate the powered industrial vehicles safely and that they be trained properly on such operation. 29 C.F.R. § 1910.178(l). Refresher training is required in the event an operator was observed operating the vehicle unsafely or was involved in an accident. 29 C.F.R. § 1910.178(l)(4)(ii). The regulations include various requirements for how forklift trucks are to be operated, including not driving them up to anyone standing in front of a bench "or other fixed object" per 29 C.F.R. § 1910.178(m)(1); keeping the controls neutralized, with the brakes set to prevent movement, if "the operator of an industrial truck is dismounted and within 25 ft. of the truck still in his view" per 29 C.F.R. § 1910.178(m)(5)(iii); requiring drivers "to look in the direction of, and keep a clear view of the path of travel" per 29 C.F.R. § 1910.178(n)(6); and prohibiting "[s]tunt driving and horseplay" per 29 C.F.R. § 1910.178(n)(9). A number of other regulations under Section 1910.178 address maintenance requirements for powered industrial vehicles, including removing from service any vehicles "not in safe operating condition" per 29 C.F.R. § 1910.178(q)(1). The Warrant Application did not discuss the foregoing regulations specifically but cited them broadly by relying on Section 1910.178 and its "regulations on safety requirements relating to operation and maintenance of powered industrial vehicles, including forklifts." Warrant Application ⁋ 5.

The Warrant Application asserted that "the information presented along with the facts meet the administrative probable cause requirements," which are that the Secretary must "show specific evidence of an existing violation of law or that neutral reasonable legislative and administrative standards for conducting an inspection are satisfied." *Id.* ⁋⁋ 8, 18. In authorizing the inspection

and signing the administrative warrant, the undersigned magistrate judge found that the Warrant

Application established administrative probable cause. The warrant itself provided:

> YOU ARE AUTHORIZED to enter the above premises during regular working hours to conduct an inspection and investigation in a reasonable manner and to a reasonable extent, including but not limited to the alleged unsafe work practices, areas, or conditions relating to operation and maintenance of forklifts. *Said inspection and investigation will extend only to the alleged hazardous working conditions and/or work areas described above, as well as to any hazardous work areas, procedures, and/or working conditions within the plain view of the Compliance Officer(s) during the course of the inspection,* and to all *pertinent* conditions, structures, machines, apparatus, devices, equipment, or materials therein, *particularly as they relate* to whether this employer is furnishing to its employees employment and a place of employment that is free from recognized hazards that are causing or are likely to cause death or serious physical harm, and whether this employer is complying with the occupational safety and health standards promulgated under the Act and the rules, regulations, and orders issued pursuant to the Act.

Warrant for Inspection Under the Occupational Safety and Health Act of 1970 ("the Warrant").

(D.E. 1.) (emphasis in italics added).[1]

Having been told on July 9 that they would need a warrant to inspect the Anthony Marano

facility, the OSHA agent and her supervisor returned to the facility on August 2 with the July 28

warrant and two members of the U.S. Marshals Service. Resp, Exh. A ¶¶ 8-9. Anthony Marano

personnel, including managers Jason Nitti and Torre Palandri, met them in a parking lot outside

the facility and told the agents they would be denied entry into the facility. *Id.* ¶ 9. No judicial

stay of the warrant was in place at that time. According to the OSHA agent, Nitti contacted an

---

[1] The language describing the scope of warrant mirrors the authorization Congress provided the Secretary in the Occupational Safety and Health Act of 1970 ("the Act"): "In order to carry out the purposes of this chapter," the statute authorizes OSHA "to enter *without delay* and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer," and "to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent, or employee." 29 U.S.C. § 657(a) (emphasis added). "[S]urprise searches are indeed contemplated." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 317 (1978).

Anthony Marano attorney by phone, and while waiting for the attorney to arrive, Nitti began video recording the agents with his telephone. *Id.* ¶¶ 9-10. In the video, the OSHA agent is heard stating that she had "no idea" what area she needed to inspect at the Anthony Marano facility, adding that "[w]e don't know where the accident occurred. We don't have any information other than someone was injured on the dock area while operating a fork truck …. We have to come in and investigate." Reply in Support of Emergency Motion to Stay Warrant ("Reply"; D.E. 14-1) at 3-4. Shortly thereafter, according to the OSHA agent, an attorney for Anthony Marano arrived and told the OSHA agents "that they were denying us entry and would be filing a motion to quash the warrant." Resp., Exh. A ¶ 11. Anthony Marano proffered at the August 6 stay motion hearing that its attorney cited to OSHA the Third Circuit's opinion in *Babcock & Wilcox Co. v. Marshall*, 610 F.2d 1128 (3d Cir. 1979). The OSHA agents, after contacting an attorney for the Secretary, left the Anthony Marano premises without executing the inspection warrant. *Id.* ¶ 12.

## ANALYSIS

Deciding Anthony Marano's Motion to Stay and Motion to Quash requires the Court to look not only at the particulars of the warrant at issue here, but also to consider the evolving landscape of employer behavior toward administrative inspection warrants as anticipated by the U.S. Supreme Court when it extended Fourth Amendment warrant requirements to administrative inspections in *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978). The Court also considers developments in the 43 years since that decision and in the 30 years since the Seventh Circuit's decision in *In re Establishment Inspection of Kohler, Co.*, 935 F.2d 810 (7th Cir. 1991). The Court looks to *Kohler* and other federal decisions in this circuit and elsewhere to reconcile the exhaustion doctrine with employers' Fourth Amendment rights when employers refuse to honor warrants

issued by magistrate judges under *Barlow's* and force the Secretary to defend them, before they can be executed, against Fourth Amendment validity challenges in federal court.

Here, Anthony Marano turned the Secretary's inspector away at the warrantless visit and required the Secretary to obtain an inspection warrant under *Barlow's*. Then, when the Secretary returned with the inspection warrant, Anthony Marano turned the inspectors away a second time, in open defiance of the warrant and its lawful authority, and moved this Court to stay execution and to quash the warrant. Anthony Marano's argument for the stay depends heavily on its view that it has a constitutional right, before the warrant is executed, to obtain judicial review of the validity of an issued warrant. The company insists that federal law, including the law of the Seventh Circuit, "is clear that there is a pre-enforcement right to judicial review of an administrative warrant." Reply at 1-2. If Anthony Marano is correct in that assertion, its emergency motion to stay the inspection warrant (before OSHA has executed it) ought to be entertained, but if Anthony Marano has no such right, the Motion to Stay is a non-starter. Accordingly, the Court first will consider Anthony Marano's claim to a pre-execution right to federal judicial review of warrant validity before turning to the four factors the U.S. Supreme Court has set forth for consideration on a motion to stay. *See Nken v. Holder*, 556 U.S. 418, 426 (2009) (listing factors as (1) the likelihood the applicant will succeed on the merits of the appeal (or, in this case, the Motion to Quash); (2) whether the applicant will be injured irreparably absent a stay; (3) whether issuance of the stay will substantially injure other parties; and (4) where the public interest lies).[2] The Court's discussion of Anthony Marano's likelihood of success on the Motion to Quash will drive the Court's decision on that motion.

---

[2] The parties agreed, at the August 6 oral argument, that the *Nken* multi-factor balancing applies to Anthony Marano's Motion to Stay.

I.  **Anthony Marano Has No Pre-Enforcement Right to Judicial Review of an Administrative Inspection Warrant in the Seventh Circuit, and the Weight of Authority in the Seventh Circuit and Elsewhere Suggests Federal Courts Should Not Recognize Such a Right.**

Anthony Marano contends that under Seventh Circuit law, employers subject to OSHA administrative inspection warrants have a right to judicial review by an Article III judge, and from that premise, the company argues that employers have a right to require such judicial review to take place before execution of the warrant in order to preserve the employer's Fourth Amendment right against unreasonable searches. *See* Reply at 2. The parties have cited to the Court a divergence of decisions from federal courts outside the Seventh Circuit, but from these cases, Anthony Marano argues that a pre-execution right to Article III judicial review of administrative warrants is grounded in two Seventh Circuit decisions in which pre-execution motions to quash were made and ruled upon, and in two Third Circuit decisions holding that in order to avoid mootness of a motion to quash an administrative inspection warrant, the employer must seek to quash the warrant before it is executed. *Id.* at 1-2 (citing *Matter of Establishment Inspection of Kelly-Springfield Tire Co.*, 13 F.3d 1160, 1169 (7th Cir. 1994); *Matter of Cerro Copper Prod. Co.*, 752 F.2d 280, 282 (7th Cir. 1985); *Babcock & Wilcox v. Marshall*, 610 F.2d 1128 (no pin cite provided) (3d Cir. 1979); and *In the Matter of Establishment Inspection of Metal Bank,* 700 F.2d 910 (3d Cir. 1983) (no pin cite provided)). The Secretary relies on the Fifth Circuit's decision in *Trinity Marine Prod. Inc. v. Chao*, 512 F.3d 198, 202 (5th Cir. 2007), which declined to recognize an employer's constitutional right to pre-execution judicial review of administrative inspection warrants. The Court considers these and other federal decisions against the backdrop of *Kohler*, which supplies perhaps the greatest amount of insight, in the Seventh Circuit, into the available remedies of employers in Anthony Marano's circumstances.

A. **The Magistrate Judge, in Issuing the Administrative Inspection Warrant, Observed Anthony Marano's Fourth Amendment Rights Under *Marshall v. Barlow's*, Which Should Not Be Extended To Require a Pre-Execution Right to Judicial Review.**

We begin with the federal constitutional protections that Anthony Marano has as an employer and that were observed in this matter. The U.S. Supreme Court, in *Barlow's*, extended the Fourth Amendment warrant requirement to administrative inspections, but in a limited fashion. In requiring OSHA to obtain an administrative inspection warrant from a neutral magistrate judge, the Supreme Court stated explicitly that "[p]robable cause in the criminal law sense is not required." *Barlow's*, 436 U.S. at 320. Instead, probable cause justifying an administrative inspection warrant "may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an … inspection are satisfied with respect to a particular [establishment].'" *Id.* at 320-21 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 538 (1967)).

The Supreme Court in *Barlow's* reasoned that imposing this lower level of probable cause on administrative inspections protected Fourth Amendment rights without placing an undue burden on the inspection system and without making inspections less effective: Even if OSHA initially visited an employer without a warrant and was turned away, OSHA's loss of the element of surprise was not "immediately apparent" to the *Barlow's* majority, so long as "procedures were available for the Secretary to seek an *ex parte* warrant and to reappear at the premises without further notice to the establishment being inspected." *Id*. at 319-20.

The justices in the *Barlow's* majority, then, were silent on whether they would have had any greater concern about the loss of surprise, and the damage to the Secretary's ability to enforce the Act, in a situation in which OSHA visits without a warrant, is turned away, obtains an administrative inspection warrant *ex parte*, and then returns to the employer without notice but is

turned away a second time based on the employer's insistence that it must first be afforded an opportunity to move to quash the warrant in the district court. The Supreme Court in *Barlow's* was not presented with the question Anthony Marano has presented here, namely whether the federal court must entertain pre-execution challenges to OSHA's administrative inspection warrants, or whether that sort of requirement – effectively permitting the employer to refuse OSHA access in the face of a neutral magistrate judge's issuance of an administrative warrant – might undercut the Supreme Court's entire rationale for imposing a Fourth Amendment administrative warrant requirement on these inspections. The *Barlow's* majority openly expressed doubt that its regime of requiring OSHA to obtain administrative warrants would consume OSHA's enforcement energies to a degree that "exceed[s] manageable proportions." *Id.* at 321.

In a dissent joined by Justices Blackmun and Rehnquist, Justice Stevens questioned that assumption and suggested that the *Barlow's* majority's prediction – that covered employers would largely accede to warrantless inspections – might not come true. *Id.* at 330 (Stevens J., dissenting). Justice Stevens added that if employers began regularly refusing to consent to warrantless inspections, OSHA might need to develop a regular practice of seeking warrants in advance to avoid "an increase in the rate of refusals and the added costs generated by futile trips to inspection sites where entry is denied …." *Id.* Justice Stevens also noted that the OSHA regulation calling for OSHA administrators to confer among themselves upon an employer's refusal of a warrantless entry, so that OSHA may "take appropriate action, including compulsory process, if necessary," *see* 29 C.F.R. § 1903.4(a), a regulation that exists today, "does not imply a judgment by the Secretary that delay caused by numerous denials of entry would be administratively acceptable." *Barlow's*, 436 U.S. at 330-31 (Stevens, J., dissenting). But even the *Barlow's* dissent did not appear to contemplate that employers would take their resistance to administrative inspections to

10

a third level, where Anthony Marano and others[3] have taken it, by defying inspection warrants issued by a magistrate judge and asking that judge or the district court to quash them before the Secretary can execute them.

This Court is bound to follow *Barlow's* and has done so, but the Court cannot help but wonder whether the disagreement between the majority and dissenting opinions in that case might have been resolved differently if the Supreme Court had been presented with Anthony Marano's argument here that employers may subject the Secretary to numerous denials of entry including after a magistrate judge has issued the administrative warrant. Anthony Marano would like this Court to extend *Barlow's* to hold that the Fourth Amendment not only requires a warrant for administrative searches under the lessened probable caused standard, but that it also requires the Secretary to refrain from executing issued warrants if the employer asks a federal court for a second level of judicial review of those warrants. Considering the legal and factual developments since

---

[3] *See In the Matter of Establishment Inspection of Kelly-Springfield Tire Co.*, 13 F.3d 1160, 1162-63 (7th Cir. 1994) (affirming district court's refusal to quash administrative inspection warrant where the employer denied OSHA access to the facility on two separate occasions despite OSHA having obtained inspection warrants); *In the Matter of Mar-Jac Poultry, Inc.*, No. 2:16-004-JCF, 2016 WL 8938586, at *1, 9 (N.D. Ga. Aug. 5, 2016) (recommending the granting of employer's emergency motion to quash an "improvidently granted" administrative inspection warrant issued after OSHA was permitted to conduct an initial, more limited, warrantless inspection) (Fuller, M.J.), *adopted,* 2016 WL 10567962 (N.D. Ga. Nov. 2, 2016); *In the Matter of Crider Poultry*, No. MC610-001, 2010 WL 1524571, at *1, 8 (S.D. Ga. Mar. 30, 2010) (recommending same, where employer permitted multiple inspections but then denied access, prompting OSHA to seek and obtain an inspection warrant that employer moved to quash four days after it was issued and before the inspection), *adopted*, 2010 WL 1524584 (S.D. Ga. Apr. 15, 2010); *In the Matter of Foundation Foods Group, Inc.*, No. 2:21-MC-16, 2021 WL 2561772, at *1-2 & n.2 (June 3, 2021) (Fuller, M.J.) (recommending denial of motion to quash filed after OSHA obtained the administrative warrant and sought to execute it, but employer obtained a temporary stay where "[i]t was apparent from the actions of the parties to that point that allowing any further attempted inspection activity was likely to result in only more disputes and emergency motions"), *adopted*, 2021 WL 2557211 (N.D. Ga. June 8, 2021) ("*FFG II*"). The Secretary, noting cases such as *Mar-Jac Poultry* and *Crider Poultry*, sees "a recent trend by employers to avoid [enforcement] … by filing motions to quash before the warrant is executed." Resp. at 7-8. Whether or not the filing of such motions before enforcement is a "trend," the foregoing cases and the instant case at least demonstrate empirically that certain employers including Anthony Marano are deploying motions to quash and to stay as a tactic to block the inspections in a manner not discussed or anticipated in *Barlow's*.

*Barlow's*, and taking the available guidance from the Seventh Circuit and other federal courts as discussed below, this Court declines Anthony Marano's invitation to undertake such a radical extension of *Barlow's* and its progeny.[4]

> **B.     The Seventh Circuit Has Held That Employers Must Exhaust Their Administrative Remedies Before Challenging an Inspection Warrant in Federal Court and Has Never Found a Right to Judicial Review of Such Warrants Before Their Execution.**

Thirty years ago, the Seventh Circuit decided *Kohler*, in which the employer, Kohler, moved to quash an administrative inspection warrant on the ground that OSHA lacked probable cause to support the inspection. 935 F.2d at 811. OSHA obtained the warrant to inspect the Kohler plant because an employee complained in January 1990 of a hazardous condition there, namely that the employee and others were hurt about three months earlier in October 1989 when they slipped into a tank of cleaning fluid containing sodium hydroxide. *Id.* Kohler produced injury records and allowed OSHA to conduct a warrantless inspection, but just as to the area around the cleaning tank, refusing a wider inspection and document production. *Id.* Nearly a month after OSHA received the employee complaint, OSHA obtained an inspection warrant from a magistrate judge permitting a comprehensive inspection of the entire facility (described in the opinion as a "wall-to-wall inspection") if a greater production of records (also ordered by the warrant) were to show an injury rate above the national average. *Id.* Kohler produced the additional injury records

---

[4] The Supreme Court recently declared that "*stare decisis* has never been treated as an 'inexorable command.'" *Ramos v. Louisiana*, ___ U.S. ___, 140 S. Ct. 1390, 1405 (2020). When the Supreme Court revisits precedent, it considers the quality of the decision's reasoning, the decision's consistency with related decisions, legal developments since the decision, and reliance on the decision. *Id.* The Supreme Court also has spoken of whether a precedential rule defies "practical workability," or "whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification." *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 854-55 (1992). This Court considers the legal and factual developments since *Barlow's* to hold not that *Barlow's* should be overruled, but that it should not be extended to include a pre-enforcement right to have a federal court stay or quash the warrant.

but initially refused OSHA access to the plant notwithstanding the warrant, which Kohler moved to quash, while OSHA moved to hold Kohler in contempt of court for defying the warrant. *Id.* The district court denied both of those motions, ordering Kohler to submit to the inspection, and while the district court was considering Kohler's motion to stay its denial of the motion to quash pending appeal, Kohler relented and allowed the inspection – but only until the district court ultimately granted Kohler's motion to stay the inspection. *Id.* The Court of Appeals then lifted the stay a month later (on June 14, 1990), some nine months after the accident and four months after OSHA obtained the inspection warrant. *Id.* OSHA conducted its inspection, and Kohler's appeal of the district court's denial of the motion to quash continued. *Id.*

The Seventh Circuit dismissed the appeal, holding that Kohler had not exhausted its administrative remedies by challenging the inspection warrant before the Occupational Safety and Health Review Commission ("the Review Commission"). *Id.* at 812-15. The Seventh Circuit went so far as to say that under the Act, "we are without jurisdiction to consider Kohler's challenge to the warrant that authorized OSHA's inspection." *Id.* at 812 & n.1 (citing 29 U.S.C. § 659). The statutory provisions cited by *Kohler* bear out that conclusion. Section 659(a) provides that if the Secretary issues a citation and imposes a penalty on the employer after an inspection or investigation, the employer has 15 working days to notify the Secretary of the employer's intent to contest the citation or the proposed penalty; if, after the 15 days, no such notice is submitted by the employer or by an employee or employee representative, the citation and the proposed penalty become a final order of the Review Commission "and not subject to review by any court or agency." 29 U.S.C. § 659(a). But if the employer does challenge the Secretary's action before the Review Commission, and if the Review Commission then issues a final order under Section 659(c), the employer may obtain judicial review of the Review Commission's final order in the

Court of Appeals for the circuit in which the violation is alleged to have occurred, the circuit where the employer has its principal office, or the District of Columbia Circuit. 29 U.S.C. § 660(a). In conferring federal appellate jurisdiction on such challenges by employers, Section 660(a) also provides that "no objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." *Id.; Kohler*, 935 F.2d at 812.

The Seventh Circuit reasoned Kohler needed to raise its Fourth Amendment objections to the inspection warrant before the Review Commission in order to obtain the Seventh Circuit's review of the district court's denial of Kohler's motion to quash:

> We cannot, therefore, review a motion to suppress evidence in an OSHRC proceeding that has not been presented to the Review Commission …. Unless administrative hearings take place, there will be no occasion to suppress evidence …. Courts usually require parties aggrieved by the action of an administrative agency to exhaust the process afforded them by the agency before turning to the courts for help. The exhaustion doctrine protects the autonomy of administrative agencies, respects administrative expertise, facilitates judicial review by ensuring a well-developed factual record, and promotes judicial economy by avoiding piece-meal review of cases and by giving the agency the opportunity to resolve the case to the parties' mutual satisfaction without judicial interference. The rationale for applying the doctrine may be even stronger in the context of a case, like this one, that raises a constitutional question, because the exhaustion requirement enables courts to avoid deciding cases on constitutional grounds unnecessarily; during administrative proceedings the constitutional issue, or the entire case, for that matter, may be resolved favorably for the aggrieved party, obviating the need for courts to address the constitutional claim.

*Id.* at 812-13 (citing, among authorities, *Babcock & Wilcox*, 610 F.2d at 1137-38). *Kohler* thus overruled an earlier Seventh Circuit decision, *Weyerhaeuser Co. v. Marshall*, 592 F.2d 373 (7th Cir. 1979), which had held that constitutional challenges to warrant validity could *not* be subjected to the exhaustion requirement because the Review Commission then had a policy of not considering Fourth Amendment questions. *Kohler*, 935 F.2d at 813. The Court of Appeals in *Kohler* noted that in the years since *Weyerhaeuser* was decided, the Review Commission policy

14

had changed so that it had begun to consider constitutional challenges to OSHA inspection warrants. *Id.*

This Court draws several conclusions from *Kohler*, each of which undermines Anthony Marano's argument that it has a pre-enforcement right to judicial review of an administrative inspection warrant, on the Motion to Stay or the Motion to Quash. First, *Kohler* held that at least in the Seventh Circuit, federal courts do not have jurisdiction to entertain motions to quash not presented to the agency for final adjudication. *Kohler* dismissed the employer's appeal of the district court's refusal to quash an administrative inspection warrant and flat-out said it had no jurisdiction to hear the federal court appeal with the employer's administrative remedies unexhausted. "[J]udges on the Seventh Circuit are careful writers: They say what they mean and mean what they say." *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 514 (N.D. Ill. 2018). Here, the Seventh Circuit said – and meant – that employers challenging these warrants must exhaust administrative remedies before coming to federal court. This holding falls well short of imposing any requirement that federal courts entertain challenges to the constitutional validity of administrative inspection warrants before the Secretary has a chance to execute them – instead, *Kohler* supports the opposite proposition.

Second, the Seventh Circuit in *Kohler* revisited its precedent in *Weyerhaeuser* to reverse course on the exhaustion requirement because the circumstances supporting *Weyerhaeuser*'s having allowed for avoidance of the exhaustion requirement had changed. *Kohler,* 935 F.2d at 813-14. This Court also now confronts changed circumstances, as discussed above: The theoretical underpinning for extending Fourth Amendment protection to administrative searches of employers' premises did not account for the possibility, and now the reality, of employers standing in the warehouse door, 30 years after *Kohler*, to block inspections authorized by a

15

*Barlow's* warrant. Consequently, this Court cannot read *Kohler* as allowing pre-execution Article III judicial review of such a warrant.

Third, this Court reaches the foregoing conclusion notwithstanding *Kohler*'s seemingly contradictory language, at the end of the opinion, stating that the decision's holding – subjecting employers to the exhaustion requirement – was dependent on employers having an avenue for Article III review of the magistrate judge's granting of the warrant, if the employer had no way to suppress the evidence obtained through the warrant in the administrative proceedings. *See Kohler*, 935 F.2d at 814-15.

> By conducting the search immediately, OSHA could preempt an ex ante appeal by the employer to the district court[,] and ex post consideration of the sufficiency of [the] warrant, whether by the district court or the Court of Appeals, might be moot absent the possibility of suppressing the evidence obtained during the inspection. That result might violate the provisions of the Federal Magistrates Act that give magistrate[] [judges] the power to rule on most pretrial matters subject to some degree of review by the district court, for it would effectively transform the magistrate [judge]'s decision to issue the warrant into an unreviewable decision about whether to admit evidence found during the inspection.

*Id.* at 815. On closer examination, this discussion's juxtaposition with *Kohler*'s application of the exhaustion requirement is not contradictory. Any confusion appears to have stemmed from a contention by OSHA, in *Kohler*, that the exclusionary rule did not apply in Review Commission proceedings. *Id.* at 814. If that were the case, the Seventh Circuit worried, the magistrate judge's issuance of the warrant might well be unreviewable, and evidence obtained in violation of the Fourth Amendment might be admitted without any further judicial review. *Id.* at 815.

But here, the Secretary has not contended that the exclusionary rule is unavailable to the employer in the administrative proceedings. To the contrary, the Secretary eliminated all doubt about Anthony Marano's ability to seek administrative suppression of evidence obtained from the

instant inspection warrant by advancing the clear contention that the exclusionary rule will apply in the administrative proceedings:

> In cases where OSHA has executed a warrant, the employer's sole remedy is to wait to see if OSHA files an administrative action based on evidence derived from a search warrant, and then file a motion to suppress the evidence. The administrative law judge in the administrative action will rule on the motion to suppress, and that ruling will be subject to appellate judicial review. The courts will not entertain an early challenge to a warrant because the employer must first exhaust its administrative remedies.

Resp. at 7. The Secretary, having made the above contention, could not argue in good faith in administrative proceedings it might someday bring against Anthony Marano that the exclusionary rule would be unavailable to Anthony Marano on a motion to suppress. Accordingly, the Seventh Circuit's appropriately cautious approach to how its exhaustion requirement in *Kohler* might push the limits of magistrate judges' authority does not render the exhaustion requirement inapplicable to this case.

Moreover, the Seventh Circuit in *Kohler* discussed at least two federal appellate decisions indicating the Review Commission indeed does determine whether evidence obtained from an invalid administrative inspection warrant can be used in the administrative proceedings. 935 F.2d at 814 (citing *Babcock & Wilcox*, 610 F.2d at 1136, and *Donovan v. Sarasota Concrete Co.*, 693 F.2d 1061, 1066 (11th Cir. 1982)). Anthony Marano relies heavily on *Babcock & Wilcox* to the extent the Third Circuit suggested that employers must seek pre-execution judicial review to preserve their rights, Reply at 1, but that case notably confirms that in the administrative proceedings in which employers may challenge the Secretary's citation, "the problem for the Review Commission will be whether to use the evidence obtained from the inspection. In deciding whether to use this evidence the Review Commission must of course, make[] its own judgment as to the propriety of the warrant." *Babcock & Wilcox*, 610 F.2d at 1136. Likewise, in *Sarasota*

*Concrete*, the Eleventh Circuit emphatically rejected the suggestion that the exclusionary rule could not be applied in Review Commission proceedings. 693 F.2d at 1071. "If fourth amendment rights are to be recognized in an OSHA context, it seems reasonable that the only enforcement mechanism developed to date should likewise be recognized." *Id.*; *see also Trinity Indus., Inc. v. Occupational Health and Safety Review Com'n*, 16 F.3d 1455, 1461 (6th Cir. 1994) (rejecting Secretary's contention that the exclusionary rule was inapplicable in all OSHA enforcement proceedings). Notably, the Sixth Circuit in *Trinity*, a case relied on by Anthony Marano for other principles, Motion to Quash at 13, held that the exclusionary rule applied only in OSHA penalty proceedings before the Review Commission. *See id.* at 1462 (citing *Smith Steel Casting Co. v. Brock*, 800 F.2d 1329, 1334 (5th Cir. 1986)). The Seventh Circuit has not expressly reached the question of the applicability of the exclusionary rule in OSHA administrative proceedings. *See Lakeland Enters. of Rhinelander, Inc. v. Chao*, 402 F.3d 739, 745 (7th Cir. 2005) (declining to rule whether corrective and punitive OSHA proceedings must be distinguished for purposes of the applicability of the exclusionary rule). But to the extent the Secretary was arguing to federal courts in the early 1990s that employers could not avail themselves of the exclusionary rule in administrative enforcement proceedings, those courts by and large have rejected the argument, which the Secretary does not make here.

The other Seventh Circuit authorities relied on by Anthony Marano for its assertion that it has a pre-execution right to judicial review of the constitutional validity of the inspection warrant, besides the overruled decision in *Weyerhaeuser*, are of no help to that assertion. *See* Reply at 2. In *Kelly-Springfield*, after the employer refused to honor two separate inspection warrants issued by a magistrate judge, the district court denied the employer's motion to quash and found the employer in contempt of court. 13 F.3d at 1163. Anthony Marano's point seems to be that the

18

employer in *Kelly-Springfield* moved to quash before the warrant was executed, Reply at 2, but the Seventh Circuit affirmed the district court's $1,000-per-day civil contempt finding "because as we held above, the warrant was valid and it is well within the court's authority to impose a monetary penalty to secure compliance with its ruling." *Id.* at 1169. The Seventh Circuit also affirmed the district court's denial of the employer's motion to quash, but nowhere in the decision did the court address whether the employer had a pre-enforcement right to judicial review of that warrant, suggesting that the Secretary did not make the argument. In any event, as *Kelly-Springfield* affirmed a contempt finding against the employer for blocking access to the plant so it could move to quash, this Court hardly can consider *Kelly-Springfield* as authorizing Anthony Marano's similar course of action here. Notably, in *Kelly-Springfield* the employer's contemptuous obstruction of the OSHA inspection occurred almost immediately after Judge Easterbrook of the Seventh Circuit denied the employer's motion for a stay of execution pending the employer's appeal of the district court's denial of the motion to quash the warrant. *Id.* at 1163.

In addition, *In re Establishment Inspection of Cerro Copper Prods. Co.* is of little use to our analysis here because it was decided six years before *Kohler* held that employers must exhaust their administrative remedies, and under the now-bygone regime of *Weyerhaeuser* in which the exhaustion requirement did not apply to challenges to these administrative inspections. 752 F.2d 280, 281-83 (7th Cir. 1985) (reversing district court's decision to quash "wall-to-wall" administrative inspection warrants that employer had sought to block with a motion for extension of time before execution and a motion to quash). *Cerro Copper*, needless to say, did not address whether the employer had a right to pre-execution judicial review of the warrants in the first place.

*Kohler* remains the clearest guidance in the Seventh Circuit for employer motions to quash administrative inspection warrants outside the administrative process, and *Kohler* holds that

employers must exhaust their administrative remedies before asking for relief in federal court.[5] Anthony Marano urged the Court to look to the Seventh Circuit to consider whether it has a pre-execution right to judicial review of the inspection warrant, Reply at 2, and the Court has done so in concluding that Anthony Marano has no such right.

C. **Relevant Federal Decisions Outside the Seventh Circuit Favor the Secretary's Argument That No Pre-Execution Right to Judicial Review Exists.**

Anthony Marano points to *Babcock & Wilcox*, other Third Circuit authority, and a "long list" of district court decisions that it contends support its claim of a pre-execution right to judicial review of inspection warrants. Reply at 2. The Court finds none of those cases sufficiently on point or persuasive enough to find such a right in derogation of *Kohler* and the exhaustion requirement.

*Babcock & Wilcox* was a 1979 Third Circuit case decided only a year after *Barlow's*. The case, which is the decision Anthony Marano's representatives cited to OSHA while refusing to honor the inspection warrant on August 2, of course did not consider the later-emerging employer practice of not honoring warrants issued under *Barlow's*. 610 F.2d at 1131. Instead, the employer in *Babcock & Wilcox* allowed the inspections authorized by an administrative inspection warrant and filed a post-execution motion to quash the warrant. *Id*. The Third Circuit held, as would *Kohler* 12 years later, that employers had to exhaust their administrative remedies before challenging the warrants in federal court. *Id.* at 1131-32. But *Babcock & Wilcox* also concluded that the employer's federal court challenge was moot because the inspection already had happened, so that to avoid mootness and preserve the invalidity claims for review by the district court, the federal court challenge must be made before the inspection occurs despite a risk of contempt. *Id.* at 1133-34.

---

[5] Somewhat surprisingly, Anthony Marano chose not to mention *Kohler* in its emergency stay motion, its reply in support of that motion, nor even in its August 10 motion to quash the warrant.

Anthony Marano extrapolates the Third Circuit's comments about mootness to a holding that to challenge the warrant in federal court, the employer must move before execution and therefore is authorized to dishonor the warrant. Motion to Stay ¶¶ 4-5. But that was not *Babcock & Wilcox*'s holding. Contrary to Anthony Marano's misreading of *Babcock & Wilcox*, the Third Circuit in that case simply treated the moot motion to quash as a motion to suppress the evidence and then considered "whether the appropriate forum for such a decision, in the first instance, is the district court or the Review Commission, *for adjudication of this matter is constrained by the doctrine of exhaustion of administrative remedies ....*" 610 F.2d at 1134-35 (emphasis added); *see also In re Establish Inspection of Metal Bank of Am.,* 700 F.2d 910, 915-16 (3d Cir. 1983) (suggesting similarly that district court challenges to inspection warrant validity are moot if the inspection has taken place, and holding that the employer must exhaust administrative remedies by seeking suppression in the Review Commission). The Third Circuit determined that the Review Commission ultimately would decide "the propriety of the warrant" and whether evidence obtained through it could be used in the administrative proceedings. *Id.* at 1136. In light of *Kohler* and the provisions in Sections 559 and 660 for administrative review under the Act, the Court respectfully disagrees with Anthony Marano's argument that employers are forced by a pair of 40-year-old Third Circuit cases – which recognized the applicability of the exhaustion requirement – to dishonor warrants and risk contempt citations in order to preserve the right to judicial review of inspection warrants.

As for the "long list" of district court decisions affirming a pre-execution right of judicial review, Anthony Marano relies primarily on *Mar-Jac Poultry* and *Crider Poultry*, district court cases out of Georgia. Reply at 2-3; Motion to Quash at 14-15. But the courts in those cases were not presented with the Secretary's argument here that the employer has no pre-execution right to

21

judicial review of the warrant's validity, beyond the magistrate judge's consideration of Fourth Amendment administrative probable cause under *Barlow's*. And, when the Northern District of Georgia very recently had the opportunity to consider the issue in *FFG II*, the district court adopted the recommendation, by the same magistrate judge who had authored *Mar-Jac Poultry* five years earlier, to deny the employer's motions to stay execution and to quash the administrative inspection warrants because no pre-execution right to judicial review existed. 2021 WL 2557211, at *2 (stating, as the magistrate judge had noted, that "neither [*Mar-Jac Poultry* nor *Crider Poultry*, both relied on by the employer] … addressed the procedural issue of whether a pre-enforcement challenge to the warrant was appropriate"). Instead, the court held that "the employer's redress should be limited to *post-execution relief* such as pursuing a motion to suppress and exhausting administrative remedies prior to appellate judicial review." *Id.* at *3 (emphasis in original).

The *FFG II* court relied on *Trinity Marine Prods., Inc. v. Chao*, 512 F.3d 198 (5th Cir. 2007), in which the employer refused OSHA entry into its facility despite OSHA having obtained an administrative inspection warrant from a magistrate judge. Although the employer relented after threats of arrest from OSHA and deputy U.S. marshals, the employer filed an emergency motion in federal court to enjoin the inspection, claiming a pre-execution right to a federal court challenge of the inspection warrant's validity. *Trinity Marine*, 512 F.3d at 201-02. The Fifth Circuit, describing this as a question of first impression, found no support for the employer's claim in the Constitution or in *Barlow's* and reasoned that the employer also had an available remedy, in the form of a federal civil rights action, for an unconstitutional administrative search. *Id.* This Court is concurring at least in the result reached in *Trinity Marine*.

22

In short, federal decisions outside this circuit do not change the Court's conclusion that Anthony Marano has no pre-execution right to judicial review of the administrative inspection warrant.

## II. Having Found No Pre-Execution Right to Judicial Review, the Court Must Deny the Motion to Stay Under the *Nken* Factors.

With no pre-execution right to judicial review of the Secretary's administrative inspection warrant, Anthony Marano's argument for a stay is stopped dead in its tracks. The Court considers it nonetheless under the *Nken* factors: (1) whether Anthony Marano has made a strong showing that it is likely to succeed on the merits of the motion to quash; (2) whether Anthony Marano will be harmed irreparably absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and (4) whether the stay is in the public interest. *Nken*, 556 U.S. at 434. "Stay applicants 'must satisfy all of the requirements for a stay.'" *Bourgeois v. Watson*, 977 F.3d 620, 629 (7th 2020) (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)). "The standard calls for equitable balancing" of the factors, with the first two factors being the "most critical." *Common Cause Indiana v. Lawson*, 978 F.3d 1036, 1039 (7th Cir. 2020) (citing *Nken*, 556 U.S. at 433-34). A stay is not a matter of right, insofar as it is "an intrusion into the ordinary processes of administration and judicial review … even if irreparable injury might otherwise result;" a stay instead is "an exercise of judicial discretion … dependent on the circumstances of the particular case." *Nken*, 556 U.S. at 427, 433. The party requesting the stay – in this case Anthony Marano – bears the burden of showing that the circumstances justify the Court exercising its discretion in favor of granting a stay. *Id.* at 433-434.

### A. Anthony Marano's Motion to Quash Has No Likelihood of Success.

Anthony Marano cannot make a strong showing of likelihood of success on its Motion to Quash, because that motion must fail both procedurally and substantively.

### 1. Without Jurisdiction to Hear Anthony Marano's Motion to Quash, the Court Must Deny It.

Anthony Marano has no right to pre-execution judicial review of the warrant and thus no ground to seek that review through its Motion to Quash, which should be denied for lack of jurisdiction because Anthony Marano has not exhausted its administrative remedies. *See supra*, Part I(A).

### 2. Anthony Marano's Motion to Quash Will Fail on the Merits.

Alternatively, if the district court nevertheless reaches the merits of the Motion to Quash, the motion should be denied because, for the reasons set forth below, the magistrate judge issued the warrant upon a sufficient showing of administrative probable cause under *Barlow's*. *See* 436 U.S. at 320.

### a. The Standard of Review for Magistrate Judges' Probable Cause Determinations, Which Are Based on Reasonable Inferences from the Presented Facts, Resolves "Doubtful" Cases in Favor of Upholding the Warrant.

The probable cause formulation of *Barlow's*, as we have said, is a lesser standard than in criminal cases. But the case law that has developed around probable cause in the criminal context is helpful to our analysis of the sufficiency of the administrative probable cause proffered in the Warrant Application. Review of the magistrate judge's probable cause determination from the Warrant Application is at least as deferential as review of the issuance of criminal warrants, if not more so, because the statutory objective of the Act "is preventive, not remedial." *Midwest Instruments*, 900 F.2d at 1153. Consequently, the Seventh Circuit has said:

> The reasonableness required of an OSHA warrant should thus be interpreted with this policy in mind and with a careful eye toward not requiring so much of an OSHA warrant application that the Fourth Amendment becomes an obstacle to common sense.

*Id.* at 1153-54.

In the criminal context, the magistrate judge's probable cause determination will be upheld "so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing...." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The probable cause determination by a magistrate judge "involves the application of law rather than an evaluation of factual evidence, [therefore] on review the appellate court is not limited to a determination of whether the district court's finding was clearly erroneous. It [the appellate court] must independently review the sufficiency of the affidavit, recognizing that *doubtful cases should be resolved in favor of upholding the warrant*." *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir. 1982) (citations omitted) (emphasis added). Because the magistrate judge is in the best position to determine if probable cause exists, having evaluated the supporting affidavit and having drawn reasonable inferences from it, the Seventh Circuit instructs that on review, the magistrate judge's probable cause determination "is given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." *Id.* (internal quotations omitted).

In making the probable cause determination, magistrate judges make a common-sense, non-technical judgment based on the totality of the circumstances set forth in the warrant application, and they are permitted, and even expected, to draw reasonable inferences from the factual information presented to them in the application. *Gates*, 462 U.S. at 238, 240. For a warrant to issue in the criminal context, magistrate judges need only find a "reasonable probability that evidence of crime will be found in a particular location; neither an absolute certainty nor even

a preponderance of the evidence is necessary." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010); *see Gates,* 462 U.S. at 235 ("Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence ... have no place in the magistrate's decision.").

  **b.**  **The Magistrate Judge's Probable Cause Determination Was Valid.**

  A review of the Secretary's investigation, of the facts developed and presented to the magistrate judge, and of the reasonable inferences the magistrate judge drew from those facts shows that the probable cause determination underlying the warrant was valid under the administrative probable cause standard set forth in *Barlow's*, requiring specific evidence of an existing regulatory violation.

  The Warrant Application followed an investigation in which OSHA received a single complaint describing an injury to an employee. The Secretary also attached to the Warrant Application an OSHA report form, which indicated that the agency received the complaint by phone on July 7, that an OSHA representative called the complainant back for further details on the injury, and that OSHA paid a warrantless visit to Anthony Marano on July 9, a visit that the company refused to allow. Neither the follow-up phone call nor the futile visit to Anthony Marano generated additional facts, and the Secretary presented what he had to the magistrate judge on July 28 in the Warrant Application.

  The facts in the Warrant Application were as follows: On March 26, 2021, a driver at the Anthony Marano plant suffered a head, neck, and back injury. The driver was treated at a hospital. The injury occurred when a forklift truck struck the driver at Anthony Marano's facility at 3000 S. Ashland Ave. in Chicago, Illinois, as the driver was cleaning up debris in a loading dock area. Importantly, the rear of the forklift struck the driver, triggering the injury. After the driver was struck, his or her head struck a vertical side post at the rear end of a nearby trailer. These facts did

not establish by clear and convincing evidence or even a preponderance of evidence that violations of 29 C.F.R. § 1910.178 (cited by the Secretary in the Warrant Application) were occurring. But they were "specific evidence," and they were enough to demonstrate probable cause for the administrative inspection warrant under the standards set forth above in *Barlow's*. Although the applicable standard of review calls for "doubtful" cases to be resolved in favor of upholding the warrant, this case could not be considered to be "doubtful" because the magistrate judge drew reasonable inferences from the evidence that provided a substantial basis for concluding that the complaint as set forth in the affidavit represented specific evidence that an existing violation of Section 1910.178 was occurring.

The reasonable inferences to be drawn from the specific facts in the Warrant Application are not complicated, the most obvious being that the forklift was being operated in reverse (based on the fact that the rear of the forklift struck the driver) and in close proximity to a trailer (which also injured the driver) at a time when the injured driver was engaged in the act of cleaning up debris on the loading dock and thus may not have been in a position to observe the rear of the forklift moving toward him or her. The driver was struck for one or more possible reasons, many of which, alone or in combination, would have represented an existing violation of the regulation and would have called for an inspection under the reasonable legislative or administrative standards arising from the emphasis plan attached to the Warrant Application, including: the driver was too close to the forklift during its operation in a loading area; if the driver was not operating the forklift at the time of the injury and the forklift was unattended, the brakes were not applied or the controls were not neutralized to prevent the forklift from moving in the loading area; if the driver was injured while the forklift was being operated by a second driver, the second driver was not paying adequate attention to the direction and speed at which the forklift was traveling in

27

reverse; the injured driver was not in a position in which he or she could easily have avoided impact with the rear-traveling forklift because the injured driver was cleaning up debris on the dock and might have faced in another direction or downward at the floor; if a second driver was operating the forklift at the time, the second driver was not adequately trained to halt operation of the forklift when other workers are cleaning up the loading dock and might be more vulnerable to an impact with the forklift, particularly when it is being operated in reverse so that the operator might be less able to see other workers in the forklift's path; if no one was at the controls and the forklift had been operated by the injured driver before he or she began cleaning up debris in the loading area, the injured driver was not adequately trained to prevent this type of incident; and/or the loading area was too cramped or did not allow an adequate amount of space between the operating forklift and the ongoing activities of other workers in the same loading area. The injury occurred recently enough to allow a reasonable inference that unsafe conditions contributing to it had not changed. All of the foregoing inferences were reasonable.

Anthony Marano might prefer an inference that the injury resulted from a simple accident, and that accidents sometimes happen in the absence of existing violations of workplace safety regulations promulgated by the Department of Labor under the Act. But the Seventh Circuit described the Fourth Amendment threshold for administrative inspections as whether the warrant application supports a "*reasonable belief*" or leads to a "*reasonable suspicion*" that the Act or its regulations were violated. *Midwest Instruments*, 900 F.2d at 1153. And the magistrate judge was reasonable in inferring that the March 26 injury involving a backward-moving forklift supported a reasonable suspicion that something was amiss at Anthony Marano, and that under the lessened administrative probable cause standard of *Barlow's*, an administrative inspection was justified.

In *Midwest Instruments*, the Seventh Circuit found the lower, non-criminal administrative probable cause standard in *Barlow's* to have been met by a complaint that "described the employees who were being injured, where they were being injured, the type of injuries, the number of injuries and the believed cause of these injuries." *Midwest Instruments*, 900 F.2d at 1153. (emphasis in original). The magistrate judge's probable cause determination here was based on specific evidence such as this, not mere "boilerplate" language from the Warrant Application, as Anthony Marano argued at the August 6 motion hearing.  As described above, the Warrant Application detailed the injury and its circumstances at the Anthony Marano facility on March 26, 2021, which constituted "specific evidence of an existing violation," upon which probable cause justifying the issuance of the warrant was based. *Barlow's*, 436 U.S. at 320.  While "a conclusory statement in the application that employee complaints have been received by OSHA, without more, is insufficient to establish probable cause," the application need not be "a model of specificity and clarity." *Burkart Randall Div. of Textron, Inc. v. Marshall*, 625 F.2d 1313, 1319 (7th Cir. 1980). The details in the Warrant Application were greater than those held sufficient by the Seventh Circuit in *Burkart*, which vaguely described "various hygiene hazards" including "unsanitary" eating areas and "inadequate" fire escapes.[6]

---

[6] The complaint to OSHA in *Burkart* was as follows:

> The complaints alleged, in pertinent part, that certain unsafe and unhealthful work conditions exist[ed] at the described workplace to which employees are exposed, to wit: That various hygiene hazards existed in the press department; that the rest rooms sewer gases [were] leaking from broken plumbing and this [was] compounded by very poor ventilation; that the eating areas were unsanitary; [and] that there were inadequate fire escapes near the production line.  The complaints alleged that these conditions threatened serious physical harm to employees, and an inspection by OSHA was requested.  The complaints indicated that the existence of these dangerous conditions may be in violation of the Act and/or the regulations issued pursuant thereto.

625 F.2d at 1315 n.1.

Like the facts in *Midwest Instruments* and *Burkart*, the facts in the Warrant Application were enough because they set forth the substance of the employee's complaints of "specific unsafe and unhealthful working conditions" and OSHA's determination that the complaint gives "reasonable grounds existed to believe that violations of the Act or regulations issued thereunder would be found" on the employer's premises, "so that the Magistrate [could] exercise independent judgment as to whether an inspection is justified, rather than acting as a mere rubber stamp validating the decision already reached by the Secretary." *Id. Barlow's* "do[es] not require that the warrant application set forth the underlying circumstances demonstrating the basis for the conclusion reached by the complainant, or that the underlying circumstances demonstrate a reason to believe that the complainant is a credible person." *Id.* at 1320 (quoting *In re Establishment Inspection of Gilbert & Bennett Mfg. Co.*, 589 F.2d 1335, 1339 (7th Cir. 1979)). Here, the paragraph in the employee complaint recited in the Warrant Application more than meets *Barlow's* standards and was enough to establish the requisite degree of administrative probable cause.

The Court is not persuaded that *Kelly-Springfield*, a 1994 Seventh Circuit decision, compels a different result. The *Kelly-Springfield* panel expressed a concern that disgruntled employees could be an insufficiently reliable source of information for complaints, so "OSHA may not rely solely on an employee complaint but must instead make an independent investigation to verify the truthfulness of the allegations," which could include "interviewing the complainant, interviewing other employees, checking medical records when possible, or contacting the employer to allow it to explain and/or respond to the alleged unsafe conditions." 13 F.3d at 1166, 1168. But in the end, *Kelly-Springfield* affirmed the district court's denial of the employer's motion to quash an administrative inspection warrant, based on a follow-up OSHA investigation that consisted of more interviews of the single, individual complainant who triggered the

investigation. *Id.* at 1162-63. The Seventh Circuit upheld the initial probable cause determination for the inspection warrant on the ground that "there is no evidence of intentional or reckless disregard for the truth on the part of the affiant in securing the warrant." *Id.* at 1169.

In the instant case, perhaps OSHA could have obtained more details through further investigation, but perhaps not. OSHA re-interviewed the complainant. It traveled to the Anthony Marano facility to attempt to inspect the plant without a warrant, whereupon presumably it might have interviewed other employees or even company executives who might have provided more details about how the March 26 injury occurred. As it happened, OSHA could not carry out those further investigative steps on July 9 because Anthony Marano exercised its right not to cooperate with the investigation. *Kelly-Springfield*'s suggestion about obtaining medical record verification was not actually pursued in *Kelly-Springfield*, a decision reached in 1994, before enactment of the Health Insurance Portability and Accountability Act of 1996, which erected barriers to disclosure to third parties of an individual's private, protected medical information.

The magistrate judge's probable cause determination was supported here not only by reasonable inferences from the facts presented in the Warrant Application, but also from the practical realities inferable from those facts, against the backdrop of a regulatory scheme based on a policy of preventing workplace injuries. The magistrate judge's probable cause determination was consistent with the Supreme Court's direction in *Barlow's*, and more specifically with the Seventh Circuit's direction in *Midwest Instruments*, that when it comes to applying Fourth Amendment standards to administrative inspection warrants sought under the Act's preventative policy, courts should not make the perfect the enemy of the good by imposing Fourth Amendment standards so stringently that they "become[] an obstacle to common sense." *Midwest Instruments*, 900 F.2d at 1153-54.

31

### c. The Warrant Was Not Stale, Harassing, or Overbroad.

The Court is not persuaded by Anthony Marano's more ancillary arguments about the Warrant Application facts being stale, OSHA's purported harassment of Anthony Marano amid an ongoing, unrelated administrative proceeding with the Secretary, or overbreadth.

Anthony Marano contends that the Warrant Application's facts are stale because OSHA attempted the warrantless inspection three and a half months after the March 26 injury. This argument has no merit. OSHA waited only two days after learning of the injury to attempt a warrantless inspection and 21 days to seek and obtain the warrant, so the agency acted without undue delay. Indeed, *Burkart* upheld an inspection warrant based on facts OSHA learned five to six months before it obtained the warrant. 625 F.2d at 1322. In addition, as explained further above, the magistrate judge reasonably inferred from the Warrant Application's facts that there was a substantial possibility that conditions leading to the March 26 injury had not changed. To find otherwise would be to find that virtually every OSHA warrant application based on a past employee complaint will be stale at the time of the application, unless perhaps OSHA inspectors can confirm the recency of the conditions very shortly before seeking the warrant. That notion ignores the practical realities accounted for by the lessened Fourth Amendment standards of *Barlow's* in the administrative realm and is in direct conflict with the Seventh Circuit's view of the permissibility of warranted administrative inspections amid the Act's preventative purpose. *Midwest Instruments*, 900 F.2d at 1153-54.

As for Anthony Marano's contention that OSHA pursued this warrant for purposes of harassment, Anthony Marano admitted at the August 6 oral argument that it had nothing to support that allegation other than the fact that the July 9 warrantless inspection attempt occurred at a time when its lawyers were occupied with another OSHA administrative proceeding. That coincidence,

however suspicious Anthony Marano might find it, is not enough in a court of law, and particularly not when Anthony Marano argues staleness, a concern the Secretary might have exacerbated if it had allowed more time to pass before attempting the warrantless inspection. Anthony Marano cannot have it both ways.

Anthony Marano also insists that the inspection warrant here is overbroad because the facility occupies some 625,000 square feet and is subjected under the warrant to a "wall-to-wall" inspection, but the Court disagrees. Anthony Marano ignores the limiting language in the warrant providing expressly that the inspection and investigation would "extend only to the alleged hazardous working conditions and/or work areas described above" and any hazardous work areas, procedures or conditions in plain view of the inspector. *See* Warrant. Administrative inspection warrants must describe the scope of the inspection with particularity, but the object of the search also "determines the reasonable scope of the search." *Platteville Area Apartment Ass'n v. City of Platteville*, 179 F.3d 574, 578-80 (7th Cir. 1999). The object of the search here was loading dock areas where forklift trucks are operated in close proximity to other workers. The Warrant Application specifically said that the March 26 injury occurred at a loading dock area. The Court considers only the four corners of the Warrant Application, and not the later-submitted video evidence Anthony Marano obtained when one of its managers started video recording the OSHA agent and a deputy U.S. marshal when they arrived to execute the warrant on August 2. *See Burkart*, 625 F.2d at 1319; *United States v. Rees*, 957 F.3d 761, 766 (7th Cir. 2020); *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009). Regardless, the OSHA agent's professed lack of knowledge, on the video, about where she was to search is of no moment, because she explained in the same breath that she did not yet know the precise location of the loading dock area where the forklift injury occurred. And that is the point: The warrant reasonably allowed OSHA to

33

inspect loading dock areas and conditions in facility locations where forklifts are operated near other workers, and the warrant, while again not a model of clarity, could not have offered greater specificity when OSHA did not know the precise location of the loading area where the March 26 injury happened or other loading areas where forklifts are operated in proximity to workers. The warrant's scope was reasonable under the circumstances, not overbroad, and not wall-to-wall.

For the reasons set forth above, the first *Nken* factor weighs thoroughly against Anthony Marano's Motion to Stay because the Motion to Quash has no likelihood of success on the merits. Thus the foregoing analysis of the first *Nken* factor also supports the Court's denial of the Motion to Quash.

**B.     Denial of the Requested Stay Will Not Irreparably Harm Anthony Marano.**

The second *Nken* factor also weighs heavily against a stay because Anthony Marano will not be harmed irreparably if the stay is not granted. First, as the Secretary notes, he may never even bring an enforcement proceeding as a result of the inspection. Resp. at 9-10. Second, even if an enforcement action is brought, the Act affords Anthony Marano with an opportunity to move in the administrative proceedings to suppress any evidence obtained during the administrative inspection, as this Court noted at length in Part I(A) above. Third, the Act affords Anthony Marano with federal judicial review, in a court of appeals, of the final determination of the Review Commission in the event of any administratively final citation or penalty.

At the August 6 oral argument (but not in its briefing), Anthony Marano at least impliedly argued that the administrative inspection was so grave an invasion of its privacy that Anthony Marano would be harmed irreparably once the warrant is executed. But *Barlow's* gives employers including Anthony Marano the protection of requiring the Secretary to meet the lowered probable cause standard in *Barlow's* before an inspection warrant may issue. This lowered standard

34

accounts for the fact that administrative inspections occur not individuals' private homes, but in workplaces where employers have safety obligations under the Act, which the Secretary is authorized to enforce. Anthony Marano's disagreement with the validity of the warrant does not create irreparable harm that would justify a stay given Anthony Marano's other post-execution remedies.

## C.     The Public Interest Lies Against Granting the Requested Stay.

The third *Nken* factor, that the stay would substantially injure other parties interested in the proceeding, was not addressed by either party and is subsumed by the fourth factor of where the public interest lies.  These factors, too, weigh against granting a stay. The Court agrees with the Secretary that the public interest is harmed to the extent that the Secretary's statutory mission of promptly inspecting and addressing workplace safety violations is hampered by his being unable to execute inspection warrants that he lawfully obtained, per *Barlow's*, from a magistrate judge. *See* Resp. at 10.

In Part I(A) above, the Court considered *Barlow's* carefully and concluded that the Supreme Court extended limited Fourth Amendment protection to places of business against warrantless administrative inspections with the anticipation that its holding would not undercut the Secretary's ability to perform statutorily contemplated surprise inspections and enforce the Act by consuming OSHA's enforcement energies beyond manageable proportions.  436 U.S. at 317-21. Allowing employers to obtain judicial stays of inspection warrants after the warrants have been issued by magistrate judges but before the warrants can be executed, particularly after employers already have refused to submit to warrantless inspections (which the *Barlow's* majority perhaps incorrectly thought would continue to be the norm), would be against the public interest.

Granting stays such as the one sought here by Anthony Marano would only encourage employers to defy lawfully issued warrants, on penalty of possible civil contempt. The idea that an employer ought to employ the civil contempt process simply as a mechanism to obtain pre-execution judicial review – which the employer is not entitled to obtain under the Act or the pertinent common law – is an insult to the public interest. If this stay were granted, or if others like it were to be granted regularly, further contempt for administrative inspection warrants issued under *Barlow's* would only proliferate. The Secretary's ability to conduct surprise inspections – contemplated by the Act – would effectively be nullified. Employers could subject the Secretary to a long and laborious process of federal court litigation during which the inspection remains indefinitely on hold, notwithstanding the Secretary's determination – approved by a neutral and detached magistrate judge – that administrative probable cause under *Barlow's* supported the inspection and that the cause of workplace safety under the Act or any of its reasonably promulgated regulations or emphasis programs demanded that an inspection take place. The Secretary's teeth as an enforcer of the Act would be dulled if not extracted altogether, because OSHA inspectors' ability to develop evidence of administrative violations, the bread and butter of enforcement proceedings, would be diminished sharply – or, at least, employers with the means to run to courts for judicial stays or to use a contempt mechanism to defeat inspections would do so more widely, effectively exempting themselves from meaningful enforcement of the Act.

None of this is in the public interest. The requested stay must be denied.

## CONCLUSION

With no pre-execution right to judicial review of the Secretary's administrative inspection warrant, and the weight of all of the *Nken* factors being against Anthony Marano's emergency

request to stay the warrant, that request in the Motion to Stay (D.E. 4) is denied. For the reasons

stated above in Parts I and II(A), the Motion to Quash (D.E. 18) is denied.


**SO ORDERED.**

ENTER:

**GABRIEL A. FUENTES**
**United States Magistrate Judge**


**DATED: August 20, 2021**