**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re | ) | |
| ESTABLISHMENT INSPECTION OF: | ) | |
| ANTHONY MARANO COMPANY, | ) | 21 M 499 |
| 3000 S. Ashland Avenue, #100, | ) | Magistrate Judge Gabriel A. Fuentes |
| Chicago, IL 60608 | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter has returned to the district court after Anthony Marano Company's ("Anthony Marano") appeal, to the U.S. Court of Appeals for the Seventh Circuit, of this Court's refusal to quash or stay an administrative inspection warrant ("Warrant Application and Warrant"; D.E. 1) that the Court issued to the Occupational Safety and Health Administration ("OSHA") on application of the Secretary of the U.S. Department of Labor ("the Secretary") on July 28, 2021. This Court determined that a party subject to an administrative inspection warrant has no pre-execution right to federal judicial review of the warrant's validity. *In re Establishment Inspection of Anthony Marano Co.*, 556 F. Supp. 3d 890, 898-908 (N.D. Ill. 2021) ("*Anthony Marano I*"). The Seventh Circuit dismissed Anthony Marano's appeal for want of appellate jurisdiction, as motions remained pending in the district court at the time of the appeal. *In re Establishment Inspection of Anthony Marano Co.* 51 F.4th 722, 734-35 (7th Cir. 2022) ("*Anthony Marano II*"). The conclusion of the appellate proceedings left the Court with an important issue to resolve: Whether the factual basis for administrative-level probable cause in support of the July 28, 2021 still-unexecuted inspection warrant, based on a complaint about an incident at the Anthony Marano facility on March 26, 2021, is now too stale to allow the inspection to proceed.

**BACKGROUND**

The July 28, 2021 administrative inspection warrant authorized an OSHA agent to conduct an establishment inspection of Anthony Marano's produce distribution facility on the South Side of Chicago. Warrant, D.E. 1 at 57-58. The agency previously visited the facility on July 9, 2021, two days after OSHA received a complaint, by telephone, that on March 26, 2021, a worker sustained injuries when he was struck from behind by a forklift operating in reverse on a loading dock at the facility. Warrant Application ¶ 9 & Exh. A. On July 9, representatives of Anthony Marano turned the OSHA agent away, refusing to consent to an inspection and insisting upon an inspection warrant. *Id.* ¶¶ 9-10. The Secretary then presented the Court with the warrant application on July 28, and the Court signed the warrant. Warrant, D.E. 1 at 57-58. Warrant in hand, OSHA returned to Anthony Marano's facility on August 2, 2021 and brought along two deputy U.S. marshals. Secretary's Cross-Motion for Certification of Contempt "Contempt Certification Motion"; D.E. 12) at 13. Representatives of Anthony Marano again met the OSHA agent outside the facility and stated that Anthony Marano was refusing OSHA entry. *Id.* The OSHA agent then handed the warrant to one of the Anthony Marano representatives, who summoned an attorney for Anthony Marano. *Id.* In the meantime, OSHA and the marshals waited for the attorney to arrive, without conducting the inspection. *Id.* The attorney arrived and advised OSHA that Anthony Marano was denying OSHA entry to the facility and planned to file a motion to quash the warrant. *Id.* OSHA and the marshals then left the facility without conducting the inspection. *Id.* at 14.

Anthony Marano, in apparent possession of the administrative inspection warrant and its docket "M number" (21 M 499), even though the warrant had not been executed, filed on that docket on August 4, 2021 an emergency motion to stay the warrant so as to allow Anthony

2

Marano time to file a motion to quash the warrant. (D.E. 4.) The Court ordered the Secretary to take no further steps to execute the warrant pending a written response the next day by the Secretary, whom the Court instructed to address "whether there is a constitutional right to pre-enforcement judicial review of administrative warrants." 8/4/21 Order (D.E. 8). Anthony Marano then filed a motion to quash the warrant on August 10, 2021. (D.E. 18.) The Court ruled 10 days later, denying Anthony Marano's request to quash the administrative inspection warrant. (D.E. 20.) The Court set forth its reasoning in a 37-page Memorandum Opinion and Order. 8/20/21 Order (D.E. 21); *Anthony Marano I*, 556 F. Supp. 3d at 898-915. The opinion included a denial of Anthony Marano's request to stay the warrant pending further appeal, reasoning under *Nken v. Holder*, 556 U.S. 418 (2009), that (1) Anthony Marano's motion to quash had no likelihood of success because Anthony Marano had no pre-execution right to federal judicial review of the warrant, which was valid in any event; (2) that Anthony Marano would not be harmed irreparably by OSHA's execution of the warrant because no OSHA citation proceeding had even begun, and upon any such administrative proceeding, Anthony Marano would be able to move to suppress the fruits of the warrant; (3) a stay pending appeal would injure substantially the public's interest in the Secretary's ability to enforce the Occupational Safety and Health Act of 1970 (the "OSH Act"); and (4) the public interest thus lay against granting a stay. *Anthony Marano I*, 556 F. Supp. 3d at 908-15.

Anthony Marano immediately sought to establish a basis to appeal the Court's refusal to quash and stay the administrative inspection warrant. First, Anthony Marano filed on August 22 an "Emergency Motion to Clarify [the Court's] August 20, 2021 Order." ("Motion to Clarify"; D.E. 22.) The Motion to Clarify claimed that the 8/20/21 Order "appear[ed] to be a final, dispositive Order on Anthony Marano's Fourth Amendment challenge." Motion to Clarify at 1.

Anthony Marano further argued, in the Motion to Clarify, that the order should be treated as a report and recommendation to which Anthony Marano had 14 days to object per Rule 72 of the Federal Rules of Civil Procedure. *Id.* at 7. The magistrate judge granted in part and denied in part the Motion to Clarify, reminding the parties that the 8/20/21 Order was entered per the magistrate judge's jurisdiction under 28 U.S.C. § 636(a)(1), and not on any district court referral that would trigger a right to object under Rule 72. 8/23/21 Order (D.E. 23). The magistrate judge added that "Anthony Marano may appeal the Magistrate Judge's order to the District Court by filing an emergency motion to quash, and/or an emergency motion to stay, before the Emergency District Judge." *Id.* But the magistrate judge, in the 8/23/21 Order, did not analyze or discuss whether the district court would have jurisdiction to entertain such an appeal.

Second, Anthony Marano proceeded to file an emergency motion to stay and quash the warrant for consideration by emergency district judge. (D.E. 26-1.) The motion did not discuss the jurisdictional basis (Section 636(a)(1)) for the magistrate judge's 8/20/21 Order and never advised the district judge of the distinction between Section 636(a)(1) jurisdiction and Section 636(b) "referral" jurisdiction, under which magistrate judges' orders are subject to a right to object under Rule 72, as discussed further below. *Id.*; 8/24/21 Tr. (D.E. 34). After hearing oral argument during a telephonic hearing, the emergency district judge treated the 8/20/21 Order as a report and recommendation and adopted it in full. 8/24/21 Order (D.E. 29); 8/24/21 Tr. at 14-15. At the very end of the telephonic oral argument hearing, Anthony Marano orally requested a stay pending an appeal to the Seventh Circuit. 8/24/21 Tr. at 16. The stay request and the *Nken* factors were not briefed any further, and the Secretary did not interpose an immediate objection. *Id.* The district court granted the stay, stating: "Okay, I will do that. All right. That should take

care of what's in front of me on an emergency basis, so everyone take care of yourselves and have a good day." *Id.*[1]

Anthony Marano's notice of appeal (D.E. 30) followed on September 2, the same day the Secretary filed a motion to lift the district court's stay and to toll the limitations period applicable to the Secretary's ability to issue OSH Act citations to Anthony Marano. Secretary's Motion to Lift Stay or in the Alternative, for Order Tolling the Statute of Limitations ("Motion to Lift Stay"; D.E. 33). After initially denying a fully briefed motion from the Secretary to dismiss the appeal for want of jurisdiction, Appeal No. 21-2661 (7th Cir. Nov. 4. 2021) (D.E. BL-16), the Seventh Circuit ultimately dismissed the appeal, holding on October 18, 2022 that no final order had issued in the district court in this case. *Anthony Marano II*, 51 F.4th at 734. With the administrative inspection warrant now back in the district court per the appellate mandate (D.E. 46), this Court held a hearing on the staleness issue on December 20, 2022. (D.E. 51.)

## ANALYSIS

Anthony Marano's submissions to the emergency district judge in August 2021 and then to the Seventh Circuit contributed to some level of confusion about the nature and source of the magistrate judge's jurisdiction in this matter. Accordingly, the Court will review its jurisdiction over the administrative inspection warrant, and the proceedings arising from its issuance, before addressing the staleness issue.

---

[1] The Court has noted, in more than two years of conducting telephonic hearings during the COVID-19 pandemic, that telephonic hearings present some unique difficulties for counsel's ability to interrupt and register timely objections. Counsel is unable to her feet or to signal an objection through other non-verbal cues. Telephonic proceedings offer no opportunity for non-verbal cues, and they move notoriously quickly, as did the August 24, 2021 telephonic hearing in the district court.

I.    **The Magistrate Judge's Jurisdiction Over the Warrant Application Stems from 28 U.S.C. § 636(a)(1) and Is Not Subject to Federal Rule of Civil Procedure 72.**

The jurisdiction of magistrate judges to entertain applications for criminal search warrants and administrative inspection warrants is a rarely visited corner of federal law. "Magistrate judges are creatures of statute, with powers conferred upon them by Congress as a result of the Federal Magistrates Act of 1968, and later as amended, the Federal Magistrates Act of 1976." *Cage v. Harper*, No. 17-cv-7621, 2020 WL 1248685, at *2 (N.D. Ill. Mar. 16, 2020), citing Act of October 17, 1968, Pub. L. No. 90-578, 82 Stat. 1108, codified as amended at 18 U.S.C. §§ 3401-3402, 3060 and 28 U.S.C. §§ 604, 631-639.   In view of a few jurisdictional misconceptions that arose during this litigation, the Court below makes clear the jurisdictional basis for its actions on the administrative inspection warrant. *See Travelers Property Cas. v. Good*, 689 F.3d 714, 718 (7th Cir. 2012) (noting courts' independent obligation to satisfy themselves that federal subject matter jurisdiction exists).

A.    **Section 636(a)(1) Vested the Magistrate Judge With Jurisdiction To Act on the Secretary's Administrative Inspection Warrant Application.**

Section 636(a)(1) of Title 28 of the United States Code is the touchstone for magistrate judge jurisdiction over the issuance of warrants. In Section 636(a)(1), Congress provided magistrate judges with "all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts." 28 U.S.C. § 636(a)(1).[2]   In this case, the Secretary sought an administrative inspection

---

[2] The Federal Magistrates Act of 1968 replaced the United States "commissioner" system by establishing the United States magistrate judge system. *United States v. Douleh*, 220 F.R.D. 391, 393 (W.D.N.Y. 2003).   The power of magistrate judges to rule on applications for search warrants was one that resided with United States commissioners before they became known as magistrate judges.   *See In re United States*, 10 F.3d 931, 938 (2d Cir. 1993).   In 1990, Congress changed the title of the position from "United States Magistrate" to "United States Magistrate Judge," but ever since, "the judicial position continues to be incompletely referred to as 'magistrate.'"   Ruth Dapper, *A Judge by Any Other Name? Mistitling of the United States Magistrate Judge*, 9 Fed. Cts. L. Rev. 1 (2015).

warrant for the Anthony Marano facility in Chicago, under the OSH Act, 29 U.S.C. §§ 651-678. (D.E. 1.) Insofar as administrative inspection warrants do not arise under the Federal Rules of Criminal Procedure, the Court looks to whether the magistrate judge's power to rule on administrative inspection warrant applications by the Secretary is conferred "by law" under Section 636(a)(1). The answer is settled in the Seventh Circuit and elsewhere. Since the U.S. Supreme Court's 1978 decision requiring judicial warrants for administrative searches, *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 324 (1978), magistrate judges have had the authority under Section 636(a)(1) to issue inspection warrants to the Secretary seeking to enforce the OSH Act. *Matter of Establishment Inspection of Gilbert & Bennett Mfg. Co.*, 589 F.2d 1335, 1341 (7th Cir. 1979). *See also In re Worksite Inspection of Quality Prods., Inc.*, 592 F.2d 611, 612 n.2 (1st Cir. 1979) ("Magistrate[] [judges] may issue warrants the same as United States Commissioners formerly could…. Their authority includes the power to issue OSHA inspection warrants."), citing 28 U.S.C. § 636(a)(1) and *Marshall v. Chromalloy Am. Corp.*, 433 F. Supp. 330, 332 (E.D. Wis. 1977), *aff'd*, 589 F.2d 1335 (7th Cir. 1979). At the December 20, 2022 hearing in this matter, the Secretary and Anthony Marano agreed that Section 636(a)(1) is the source of the magistrate judge's jurisdiction over the administrative inspection warrant.

Search warrants and administrative inspection warrants are not the only matters that are within the magistrate judge's jurisdiction under Section 636(a)(1). Insofar as Section 636(a)(1) refers to powers and duties conferred under the Federal Rules of Criminal Procedure, magistrate judges have jurisdiction in criminal cases to conduct initial appearances (Rule 5), preliminary hearings (5.1), hearings on modification of revocation of probation and supervised release (Rule 32.1), and misdemeanor and petty offense trials with a defendant's consent (Rule 58), to name a few examples. In the Northern District of Illinois, such matters are held before magistrate judges

who are considered "directly assigned" to these matters as part of their criminal "duty" with "the power to perform all duties set forth in the United States Code and the Federal Rules of Criminal Procedure."  N.D. Ill. Local Crim. R. 5.1, 41(a), 50.4(a).  Accordingly, the magistrate judge is the assigned judge in any *ex parte* search warrant or administrative inspection warrant application, or any other matter the magistrate judge is empowered to hear through Section 636(a)(1).   In this matter, the Secretary presented the administrative inspection warrant application (D.E. 1) to the undersigned magistrate judge on criminal duty on July 28, 2021.

Separately, magistrate judges have jurisdiction to conduct detention hearings, 28 U.S.C. § 636(a)(2), but this authority intersects with the Bail Reform Act of 1984, a separate statute that allows for district court review of magistrate judges' decisions detaining or releasing criminal defendants pending trial.  *See* 18 U.S.C. § 3145.

### B. Magistrate Judges' Jurisdiction Under Section 636(a)(1) Is Distinct from Their Jurisdiction Under Section 636(b).

Section 636(a)(1), as the source of the magistrate judge's jurisdiction over the administrative inspection warrant here, is distinct from other sources of magistrate judges' authority and jurisdiction under the Federal Magistrates Act of 1976, now commonly known as the Magistrate Judges Act.  Whereas Section 636(a)(1) matters such as search warrant and administrative inspection warrants land before the magistrate judge in the first instance, upon application, matters reaching the magistrate judge under Section 636(b) have a separate route: referral from the district judge.

Section 636(b)(1)(A) allows district judges to designate a magistrate judge to hear and determine any pretrial matter before the court, except for motions:

- for injunctive relief;

- for judgment on the pleadings;

8

- for summary judgment;

- to dismiss or quash an indictment or information made by the defendant;

- to suppress evidence in a criminal case;

- to dismiss or to permit maintenance of a class action;

- to dismiss for failure to state a claim upon which relief can be granted; or

- to involuntarily dismiss an action.

28 U.S.C. 636(b)(1)(A). *See also Cage*, 2020 WL 1248685, at *3 ("Courts have thus found other types of motions, not explicitly enumerated in Section 636(b)(1)(A), to fall outside of the magistrate judge's power to issue orders because they are sufficiently analogous to the eight enumerated exceptions."), citing *Gomez v. United States*, 490 U.S. 858, 873-74 (jury selection); *Williams v. Beemiller*, 527 F.3d 259, 266 (2d Cir. 2008) (motion to remand); and *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1069 (9th Cir. 2004) (order authorizing involuntary medication). Magistrate judges' decisions on referral of such non-dispositive pretrial matters under Section 636(b)(1)(A) are subject to a party's ability to object in the district court within 14 days after service of the magistrate judge's order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a).

Alternatively, Section 636(b)(1)(B) permits the district court to designate the magistrate judge to hear any of the types of dispositive motions on the foregoing list, so long as the magistrate judge does no more than submit, to the district court, proposed findings of fact and recommendations for disposition *by the district court* of such motions. Section 636(b)(1)(B) includes disposition of (a) applications for posttrial relief made by persons convicted of criminal offenses, and (b) prisoner petitions challenging conditions of confinement as among the matters

for which magistrate judge actions (absent the parties' consent) are limited to reports and recommendations to the district court.

In cases in which magistrate judges act under Section 636(b)(1), commonly known as "referral" matters, the magistrate judge "shall file … proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties." 28 U.S.C. § 636(b)(1)(C). Reports and recommendations of magistrate judges on dispositive matters are subject to a party's objections to the district court within 14 days, with a further 14 days allowed for a response to such objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Advisory Committee Notes to Rule 72 make clear that Rule 72(a) "addresses court-ordered referrals of nondispositive matters under 28 U.S.C. § 636(b)(1)(A)," and that Rule 72(b) "governs court-ordered referrals of dispositive pretrial matters and prisoner petitions challenging conditions of confinement, pursuant to statutory authorization in 28 U.S.C. § 636(b)(1)(B)." Fed. R. Civ. P. 72, Advisory Committee Note to 1983 addition. Further, the Advisory Committee added that Rule 72 "implements the statutory procedures for making objections to the magistrate[] [judge's] proposed findings and recommendations…. [T]he rule requires the district judge *to whom the case is assigned* to make a de novo determination of those portions of the report, findings, or recommendations to which timely objection is made." *Id.* (emphasis added).[3]

The foregoing authorities confirm that the procedure in which litigants may object under Rule 72 to a magistrate judge's action, in order to obtain district judge review of that action, is limited to matters in which: (1) the magistrate judge has acted on a referral from the district judge, (2) the matter is one to which a district judge already has been assigned, and (3) the

---

[3] As is plain from this reference in Rule 72's Advisory Committee Notes, matters referred to the magistrate judge under Section 636(b)(1)(B) already have an assigned district judge, who makes the referral. Matters before the magistrate judge under Section 636(a)(1) on criminal duty have no assigned district judge, as the magistrate judge is the "directly assigned" judge in those matters per Local Criminal Rules 5.1 and 50.4.

magistrate judge's authority, to take the action being objected to or challenged before the assigned district judge, arises from Section 636(b)(1). Rule 72 makes no mention at all of Section 636(a)(1), or of matters in which magistrate judges act under the authority of that subparagraph. Section 636(a)(1) makes no mention of any procedure for objections to be asserted in the district court.

> **C.    Rule 72 and Section 636(b) Did Not Apply in This Case Because the Magistrate Judge's 8/20/21 Order Arose Under Section 636(a)(1).**

The distinction between magistrate judges' authority under Section 636(b)(1) and Section 636(a)(1) is important in this case, because Section 636(b) allows for district court review of magistrate judges' orders entered under their Section 636(b) referral jurisdiction, whereas Section 636(a)(1) does not provide for district court review of magistrate judges' orders entered under their Section 636(a)(1) jurisdiction. The Rule 72 objection process was not available at all for the 8/20/21 Order, and the availability of direct appeal to the emergency district judge was, at the very least, questionable.

> **1.    Rule 72 Does Not Apply to the 8/20/21 Order or to the Administrative Inspection Warrant in This Proceeding.**

For the reasons stated above in Part I(B), Rule 72 of the Federal Rules of Civil Procedure did not entitle the parties in August 2021, and does not entitle them now, to 14 days to object to the magistrate judge's determinations made under the authority granted to it by Section 636(a)(1). Anthony Marano argued on appeal that it had a right to object to the 8/20/21 Order within 14 days, but the Seventh Circuit never reached this question. *Anthony Marano II*, 51 F.4th at 735 n.43.[4] This Court reaches it as part of its analysis of its jurisdiction over the

---

[4] The Seventh Circuit also did not reach the broader question of the 8/20/21 Order's core holding that Anthony Marano has no pre-execution right to federal judicial review of the administrative inspection warrant's validity, but in a footnote, the Seventh Circuit expressly rejected Anthony Marano's argument

administrative inspection warrant in this case, and to clear up the significant confusion that was injected into this case by Anthony Marano's erroneous invocation of Rule 72 before the emergency district judge and later the Seventh Circuit.

In setting the record straight, we note the many judicial decisions refusing to entertain pre-execution challenges to criminal search warrants, which magistrate judges also issue under their Section 636(a)(1) jurisdiction. The criminal search warrant context is analogous to administrative inspection warrant applications, in that in both instances, executive branch enforcement of a particular statute or regulation would be hampered significantly if the enforcement agency had to fight off, in federal court litigation, challenges to warrants before the agency could execute them or review their fruits. In the criminal context, the Supreme Court definitively has rejected the notion that a target of a search warrant has a right to make a pre-execution court challenge to that warrant:

> The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, *ex ante*, the "deliberate, impartial judgment of a judicial officer … between the citizen and the police," and by providing, *ex post*, a right to suppress evidence improperly obtained and a cause of action for damages.

*United States v. Grubbs*, 547 U.S. 90, 99 (2006), quoting *Wong Sun v. United States*, 371 U.S. 471, 481-82 (1963). Other courts have described these limits on a warrant target's ability to bring pre-execution challenges to warrant validity, as articulated in *Grubbs*, as a problem of standing. *See*, *e.g.*, *In re Search of Recs., Info., & Data Associated with 14 Email Addresses Controlled by Google, LLC*, 438 F. Supp. 3d 771, 776 (E.D. Mich. 2020). Others have cited *Grubbs* for its channeling of the warrant target's remedies to post-execution suppression motions and after-the-fact civil rights litigation. *See In re the Search of Info. Associated With One Acct.*

---

that existing Seventh Circuit precedent, articulated in *In re Establishment Inspection of Kohler Co.*, 935 F.2d 810 (7th Cir. 1991), established such a right. *Anthony Marano II*, 51 F.4th at 734 n.42.

*Stored at Premises Controlled by Facebook, Inc.*, Nos. 21-sc-1386 (GMH), 21-sc-1387 (GMH), 2021 WL 2302800, at *2-3 (D.D.C. June 4, 2021) (denying Facebook subscriber's pre-execution motion to quash search warrant served on Facebook for his account information, citing *Grubbs*); *United States v. Info. Associated with Email Acct. (Warrant)*, 449 F. Supp. 3d 469, 474-75 (E.D. Pa. 2020) (citing *Grubbs* for proposition that the remedies of persons aggrieved by search warrants are limited to suppression motions and later civil rights litigation, "in contrast to subpoenas, which are regularly challenged pre-execution"); *United States v. Richards*, No. 2:20-cr-182-DBB, 2020 WL 5893974, at *1 (D. Utah. Oct. 5, 2020) (citing *Grubbs* and *Info. Associated with Email* for the same proposition); *United States v. Lasley*, No. 07-20067-02-CM, 2014 WL 695392, at *1 (D. Kan. Feb. 24, 2014) (finding that criminal defendant had no right to raise Rule 72-type objections to magistrate judge proceedings that took place under the authority of Section 636(a)(1), such as initial appearance, detention hearing, arraignment, and discovery scheduling).

In *Info. Associated with Email*, Judge Beetlestone delved further into how miring warrant validity in federal litigation before execution of the warrant would pose significant enforcement challenges:

> Practical concerns support the conclusion that Petitioner cannot challenge the warrant *ex ante* in this case…. Granting standing to subjects of SCA [Stored Communications Act] warrants to intervene would undercut Congress' goals in passing the Act. Allowing litigation of these types of claims at this point in the proceeding runs a high risk of unduly compounding the proceeding, turning the swift execution of warrants into protracted legal battles that would prevent the Government from timely resolving its investigations.

449 F. Supp. 3d at 475-76.

Judicial concern about court-imposed delay on criminal proceedings and investigations is of very long standing. *See Cobbledick v. United States*, 309 U.S. 323, 325 (1940)

("[E]ncouragement of delay is fatal to the vindication of the criminal law."); *United States v. Dionisio*, 410 U.S. 1, 17 (1973) (noting the public interest in "the fair and expeditious administration of the criminal laws"). In *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978), the Supreme Court reversed lower court holdings that the Fourth Amendment forbade a search warrant directed at persons not suspected of criminal activity unless a subpoena were impracticable, citing the "hazards to criminal investigation[s]" posed by the lower courts' rule, which would engender pre-enforcement litigation of subpoenas, and "[e]ven time spent litigating such matters could seriously impede criminal investigations." *Id.* at 552, 560-61 & n.8. The Eleventh Circuit recently reiterated this concern in the context of a post-execution attempt to bring federal civil litigation to restrain the executive branch from reviewing the fruits of an executed search warrant. *Trump v. United States*, No. 22-13005, 54 F.3d 689, 2022 WL 17352069 (11th Cir. Dec. 1, 2022) (slip op. at 11-14). In *Trump*, the Eleventh Circuit held that in the absence of a "most callous disregard of constitutional rights" that "would otherwise leave the subject of a search warrant without recourse," the district court erred in exercising "equitable jurisdiction," in an action styled as a suit under Rule 41(g) for return of property seized in a government search, to enjoin the government from reviewing materials seized under a search warrant. *Id.* Absent such a "callous disregard," the Eleventh Circuit emphasized, "courts will not intervene in an ongoing investigation – and rightly so …. This restraint guards against needless judicial intrusion into the course of criminal investigations – a sphere of power committed to the executive branch." *Id.* at 12-13.

The same concerns exist in the administrative context and weigh against any attempt to bend and stretch Rule 72 and Section 636(b) into a regime that would create a procedure for extra-statutory, pre-execution objections to administrative inspection warrants issued under the

authority of Section 636(a)(1).  The Court in this matter already has expressed the very same concerns that the delay and burden caused by pre-enforcement challenges to the validity of administrative inspection warrants would impede the Secretary's ability to enforce the OSH Act. *See Anthony Marano I*, 556 F. Supp. 3d at 899-900 (noting that in extending the Fourth Amendment warrant requirement to administrative inspections, the U.S. Supreme Court in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 321 (1978), considered the impact of its holding on the Secretary's ability to enforce the OSH Act and concluded that requiring an administrative inspection warrant would not "consume OSHA's enforcement energies to a degree that 'exceed[s] manageable proportions.'").

In the context of administrative inspections sought by the Secretary to enforce the OSH Act, delay associated with pre-execution federal court litigation (such as the litigation of Rule 72 objections) is potentially fatal to the Secretary's investigations. With respect to OSH Act violations, Congress has provided that the Secretary may not issue a citation "after the expiration of six months following the occurrence of any violation."  29 U.S.C. § 658(c). Here, the Secretary has advised the Court that Anthony Marano's efforts to avail itself of the Rule 72 objections process in this matter probably have stopped already the Secretary's investigation dead in its tracks because of a limitations problem, insofar as Section 658(c)'s six-month limitations period (for a citation stemming from the March 26, 2021 complaint that led to the administrative inspection warrant) was set to expire on September 26, 2021.  Motion to Lift Stay at 2.  The Secretary has expressed concern that Anthony Marano was frustrating the Secretary's enforcement responsibilities and avoiding the inspection "by waiting out the clock on the appeal period until OSHA's statute of limitation expires."  *Id.*  Anthony Marano filed its notice of appeal (D.E. 30) on the same day the Secretary moved to toll the limitations period (D.E. 33),

and the Seventh Circuit appeal proceeded, thus depriving the district court of jurisdiction to act on the Secretary's motion. (D.E. 35.)  Consequently, the six-month limitations period for any citation arising from conditions at the Anthony Marano plant on March 26, 2021 now has expired.  In addition, pre-enforcement delays from Rule 72 litigation could put the Secretary at risk of having the administrative inspection quashed as stale; *see* Part II below for a discussion of just how grave that risk turned out to be in this matter.  The events in this case demonstrate a powerful analogy from enforcement of the criminal laws through search warrants to administrative enforcement of remedial civil statutes, and particularly the OSH Act, through inspection warrants.  The sound rationale for jurisprudential limitations on federal judicial interference with criminal investigations, as stated in cases like *Grubbs* and *Trump*, applies equally if not more so in this matter involving administrative enforcement of the OSH Act.  Moreover, even where pre-enforcement Rule 72 litigation of an administrative inspection warrant's validity does not defeat the Secretary's investigation entirely or result in staleness of the warrant, such litigation could consume the Secretary's enforcement energies beyond "manageable proportions" in a manner that might limit the Secretary's enforcement abilities well beyond what the Supreme Court envisioned in requiring administrative probable cause for establishment inspections in the first place.  *See Barlow's*, 436 U.S. at 321.

In other words, pounding the round peg of inspection warrants issued under Section 636(a)(1) into the square hole of the objection procedures of Section 636(b)(1) and Rule 72 may well subject administrative inspection warrants to death by a thousand cuts.  The Court's interpretation of the Magistrate Judges Act and Rule 72, supported by the many practical rationales stated in this opinion, establishes that there is no legal basis for grafting the Rule 72 objection procedure onto magistrate judge decisions rendered under Section 636(a)(1). The

16

parties in this matter do not have a right to resort to the Rule 72 objections process in this administrative inspection warrant matter.

### 2. The Parties' Right to Emergency District Court Review of a Magistrate Judge's Decision Rendered Under Section 636(a)(1) Is Not Clear.

Anthony Marano brought its appeal of the 8/20/21 Order before the emergency district judge at the suggestion of the magistrate judge. 8/23/21 Order (D.E. 23). Upon a closer review of the law, the Court now questions whether jurisdiction for such an appeal exists. The Court's suggestion for an emergency district judge appeal was drawn from the general practice, in the Northern District of Illinois, of allowing a party to obtain emergency district judge review of orders entered by magistrate judges on criminal duty. *See* N.D. Ill. Local Crim. R. 50.4(a). But the jurisdictional basis for such an appeal does not appear in Local Criminal Rule 50.4, and there are no advisory committee notes to that rule.[5] Courts that have entertained appeals in this district of magistrate judges' decisions on search warrants have not discussed the jurisdictional basis for such appeals or how such a basis could be rooted in a local rule. *In re Search of Single-Fam. Home*, 549 F. Supp. 3d 810, 814 (N.D. Ill. 2021); *In the Matter of the Search Warrant Application for [Redacted Text]*, 279 F. Supp. 3d 800, 801 (N.D. Ill. 2017).

But to the extent that district courts elsewhere have analyzed the question of whether district court appeals may be brought from magistrate judges' decisions rendered under Section

---

[5] Congress provided that "[e]ach district court shall establish rules pursuant to which the magistrate judges shall discharge their duties," 18 U.S.C. § 636(b)(4), but whether Local Criminal Rule 50.4(a) actually confers jurisdiction for appeals to the district court of magistrate judges' rulings under Section 636(a)(1) is at least an open question. First, the language of Section 636(b)(4) does not suggest that Congress intended to authorize district courts to confer jurisdiction by local rule. Second, local rules such as Local Criminal 50.4(a) ordinarily do not confer jurisdiction themselves. *See Kapco Mfg. Co. v. C & O Enters., Inc.*, 108 F.R.D. 55, 56 (N.D. Ill. 1985) (stating that local rule "is not a jurisdictional statute which confers or divests a court of subject matter jurisdiction"). Ordinarily, local rules govern how courts exercise jurisdiction once it is conferred by statute. *See, e.g.*, N.D. Ill. Local Civil Rule ("LR") 16.3 (establishing voluntary mediation program for cases arising under the Lanham Act); LR 16.4 (governing scheduling of Social Security disability appeals "brought pursuant to 42 U.S.C. § 405(g)"); LR 40.3.1(a) (referring bankruptcy matters arising under Title 11 of the U.S. Code to bankruptcy judges).

636(a)(1) jurisdiction, the weight of the available authority is against the notion that jurisdiction exists for such appeals. In *United States v. Alatorre*, No. 19-mj-102 (KMM), 2019 WL 1004593 (D. Minn. Mar. 1, 2019), the government charged three defendants in a felony criminal complaint, and a magistrate judge dismissed the complaint after a preliminary hearing – held by the magistrate judge under Federal Rule of Criminal Procedure 5.1 – at which the magistrate judge found that the complaint was not supported by probable cause. *Id.* at *1. The government brought an emergency motion to appeal before a district judge, but that judge denied the emergency motion, finding that the district court had no jurisdiction to hear appeals of magistrate judges' decisions rendered under Section 636(a)(1). *Id.* at *2-4. "Unlike § 636(b)(1), Civil Rule 72, and Local Rule 72.2, neither 28 U.S.C. § 636(a)(1) nor Criminal Rule 5.1 provide for any review by the district court. This clear textual distinction between the rules leaves the Court doubting its authority to review [the magistrate judge's decision]." *Id.* at *2; *see also United States v. Gutierrez-De La Rosa*, 426 F. Supp. 3d 722, 726-27 (E.D. Wash. 2019) (expressing "serious doubts" about whether district court had jurisdiction over government's appeal to the district court of a magistrate judge's dismissal, after preliminary hearing, of the government's petition for a finding of a supervised release violation). In *Gutierrez-De la Rosa*, the government appealed a magistrate judge's finding of no probable cause at the preliminary hearing on the alleged supervised release violation and claimed that jurisdiction for such an appeal derived from Section 636(b)(1)(A), which, as this Court discussed above, allows for district court review of magistrate judges' decisions made on the district court's referral of non-dispositive matters. *Id.* at 726. The *Gutierrez-De la Rosa* court reasoned that the magistrate judge had acted not under the authority of Section 636(b)(1)(A), but under Federal Rule of Criminal Procedure 32.1(b)(1), which provides for magistrate judges to conduct preliminary hearings on supervised release

violations. *Id.* But relying on Rule 32.1(b)(1) as the source of the magistrate judge's jurisdiction was another way of saying that the jurisdictional basis was Section 636(a)(1), which confers on magistrate judges all powers and duties granted to them by the Federal Rules of Criminal Procedure. 28 U.S.C. § 636(a)(1). In effect, the government was trying to shoehorn the magistrate judge's finding of no probable cause into Section 636(b)(1)(A), which the *Gutierrez-De la Rosa* court reasoned was not the proper fit. 426 F. Supp. 3d at 726.[6]

In *Info. Associated with Email*, Judge Beetlestone rejected an appeal to the district court, by the target of a search warrant, of the magistrate judge's denial of the target's motion to quash the warrant. 449 F. Supp. 3d at 473-75. The district judge determined that the search warrant properly came before the magistrate judge under Section 636(a)(1), which "does not explicitly provide for any right of appeal or review of acts performed pursuant to that section's authority by a magistrate judge." *Id.* at 472-73. In contrast to Section 636(b)'s review mechanism and standard of review for consideration by district courts of objections to magistrate judges' decisions made on Section 636(b) referrals, "Section 636(a)(1) is thus unique within the statute in its lack of a mechanism for review or expressed standard of review." *Id.* at 473-74. "[C]ontext yields the more natural reading that Congress, in creating § 636(a), intended to simply codify existing authority held by magistrate[] [judges] and grant them authority to conduct other limited criminal proceedings. Congress's failure to include a standard of review or right of appeal for § 636(a)(1) indicates it did not intend to provide such a mechanism." *Id.* at 474. As

---

[6] *But see Matter of Search of Info. Assoc. with Cellular Telephone Towers Providing Service to [Redacted]*, Nos. 21-sc-59, 21-sc-60, 21-sc-61, and 21-sc-62 (GMH), ___ F. Supp. 3d ___, 2022 WL 2922193, at *3 (D.D.C. July 25, 2002) (reversing magistrate judge's rejection of search warrant application and finding that jurisdiction for district court review existed by analyzing the magistrate judge's jurisdiction as arising from "additional duties" conferred upon magistrate judges by Section 636(b)(3), without discussing Section 636(a)(1), and by reasoning that district court's local rule thus permitted the appeal – but without discussing how jurisdiction could be conferred by local rule). This Court considers Section 636(b)(3) to be no better a fit for magistrate judges' jurisdiction over a search warrant than was Section 636(b)(1)(A) in *Gutierrez-De la Rosa*.

further evidence of no such Congressional intent, Judge Beetlestone pointed to the Bail Reform Act, in which Congress specifically provided, in 18 U.S.C. § 3145, a right of appeal to the district court for magistrate judges' decisions on pretrial release or detention, a power granted to magistrate judges by Section 636(a)(2). *Id.* at 474 n.3. "If a right to appeal or review [of magistrate judges' release or detention decisions] was inherent in § 636(a), there would have been no need to pass legislation" providing for appeal of those decisions to the district court. *Id.*

This Court notes that Congress also provided for district court review of magistrate judges' certification of facts in support of contempt citations, another power conferred to magistrate judges under the Magistrate Judges Act. 28 U.S.C. § 636(e)(7). Congress therefore provided for district court review of magistrate judge decisions in at least three situations: (1) decisions made on Section 636(b) referrals; (2) detention-or-release decisions made under Section 636(a)(2) and reviewable under 18 U.S.C. § 3145; and (3) certification of facts in support of a contempt citation under 28 U.S.C. § 636(e).[7] Yet Congress does not appear to have provided anywhere that any decision by a magistrate judge under Section 636(a)(1) is reviewable by a district court.

The foregoing contrary authority thus calls into question this Court's earlier suggestion, in its 8/23/21 Order, that Anthony Marano had a right to emergency district judge review of the magistrate judge's denial of its motion to quash. Any party seeking to press an emergency appeal to a district court of a magistrate judge's decision rendered under the jurisdiction of Section 636(a)(1) should flag the foregoing jurisdictional question before the district judge to whom any such appeal is directed.

---

[7] In addition, in misdemeanor and petty offense criminal cases, Federal Rule of Criminal Procedure 58 allows for appeals, to the district court, of magistrate judges' interlocutory orders ("if a district judge's order could similarly be appealed") and of magistrate judges' judgments of conviction or sentence. Fed. R. Crim. P. 58(g)(2)(A), 58(g)(2)(B).

II.     **The Administrative Inspection Warrant Must Be Quashed Because the Secretary's Probable Cause Showing Is Now Stale.**

The Court issued the administrative inspection warrant in this matter on July 28, 2021, based on events alleged to have occurred at the Anthony Marano facility on March 26, 2021, and made known to the Secretary on July 7, 2021.  (D.E. 1.)  The district court's eventual stay (D.E. 29) of the warrant's execution pending Anthony Marano's Seventh Circuit appeal caused the warrant not to be executed during the pendency of that appeal.  With the matter having returned to this Court in December 2022 upon dismissal of Anthony Marano's appeal, nearly 21 months have passed since the events giving rise to the warrant application.  The Court *sua sponte* convened a hearing on December 20, 2022, and after an oral motion by Anthony Marano to quash the warrant as stale, the Court proceeded to consider the staleness question on its own motion.  (D.E. 51.)

The Seventh Circuit has not prescribed a bright-line rule for determining when information supplied in support of a search warrant application becomes stale.  *United States v. Sutton*, 742 F.3d 770, 774 (7th Cir. 2014).  The recency of the information is among the factors bearing on probable cause.  *Unites States v. Pappas*, 592 F.3d 799, 803 (7th Cir. 2010).  If factors other than the age of the inculpatory information indicate a sufficiently reliable level of probable cause, the search warrant should issue.  *United States v. Delatorre*, 508 F. Supp. 2d 648, 652-53 (N.D. Ill. 2007).  Staleness, though, is highly relevant to the legality of a warrant, insofar as probable cause measures the likelihood of uncovering evidence of a crime at the time of the search.  *United States v. Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991).

Here, the Secretary applied for the administrative inspection warrant for Anthony Marano's produce distribution facility on the South Side of Chicago by supplying the Court with

the following information:  On July 7, 2021, an Anthony Marano employee contacted OSHA by telephone, prompting OSHA to call the "source" back for "more info" and "[d]iscussed incident/injury."  Warrant Application, Exh. A.  The OSHA form prepared by the agency to memorialize the caller's information summarized the report as follows:

> On or about March 26, 2021, at approximately 12:30 PM, Driver #1 was cleaning up debris in the loading dock area when Driver #1 was struck in the back by a forklift, which was operated in reverse.  Driver #1's head hit the vertical side post of the rear end of a trailer.  Driver #1 was transported by EMS to a local hospital and treated for head, neck, and back injuries.

*Id.*  The Warrant Application's supporting affidavit related that on July 9, 2021, the OSHA agent and affiant visited the Anthony Marano facility in an attempt to conduct a warrantless inspection but was told to leave immediately.  Warrant Application ⁋ 9.  The Warrant Application also referred to OSHA's "emphasis program," effective on October 1, 2018, for "powered industrial vehicles," which include forklift trucks, and the emphasis program calls for inspection upon "***all*** serious complaints and referrals, alleging a hazard or a condition that may be a violation of the powered industrial truck standard or a potentially fatal 'struck/caught/fall hazard' associated with the operation of a powered industrial vehicle …."  *Id.* ⁋⁋ 6-7 (emphasis in original).  The Warrant Application further cited 29 C.F.R. § 1910.178, "specifically the regulations on safety requirements relating to operation and maintenance of powered industrial vehicles, including forklifts." *Id.* ⁋ 5.

In denying Anthony Marano's earlier motion to quash and stay the administrative inspection warrant, the Court found, in its 8/20/21 Order, that the Court's probable cause determination at the time of the warrant's issuance was valid, based on "[a] review of the Secretary's investigation, of the facts developed and presented to the magistrate judge, and of the reasonable inferences the magistrate judge drew from those facts."  *Anthony Marano I*, 556 F.

22

Supp. 3d at 909. The Court reviewed the reasonable inferences that it could and did draw from the Secretary's proffered facts and found that those inferences met the lessened administrative probable cause standard under *Barlow's*, namely that the Secretary adequately had set forth specific evidence of an existing regulatory violation. *Id.* at 910-13, citing *In re Establishment Inspection of Midwest Instruments Co.*, 900 F.2d 1150, 1153-54 (7th Cir. 1990).

The 8/20/21 Order also rejected Anthony Marano's argument that by July 28, 2021, the Secretary's proffered facts in support of the warrant application already were stale:

> Anthony Marano contends that the Warrant Application's facts are stale because OSHA attempted the warrantless inspection three and a half months after the March 26 injury. This argument has no merit. OSHA waited only two days after learning of the injury to attempt a warrantless inspection and 21 days to seek and obtain the warrant, so the agency acted without undue delay. Indeed, *Burkart* upheld an inspection warrant based on facts OSHA learned five to six months before it obtained the warrant. 625 F.2d at 1322. In addition, as explained further above, the magistrate judge reasonably inferred from the Warrant Application's facts that there was a substantial possibility that conditions leading to the March 26 injury had not changed. To find otherwise would be to find that virtually every OSHA warrant application based on a past employee complaint will be stale at the time of the application, unless perhaps OSHA inspectors can confirm the recency of the conditions very shortly before seeking the warrant. That notion ignores the practical realities accounted for by the lessened Fourth Amendment standards of *Barlow's* in the administrative realm and is in direct conflict with the Seventh Circuit's view of the permissibility of warranted administrative inspections amid the Act's preventative purpose.

*Anthony Marano I*, 556 F. Supp. 3d at 913, citing *Burkhart Randall Div. of Textron, Inc. v. Marshall*, 625 F.2d 1313, 1322 (7th Cir. 1980), and *Midwest Instruments*, 900 F.2d at 1153-54.

At the Court's December 20, 2022 hearing on staleness of the administrative inspection warrant after the dismissed Anthony Marano appeal, the Secretary argued that the warrant was not stale because denying the Secretary the ability to execute the warrant penalizes the Secretary for the delay Anthony Marano caused through its pre-enforcement federal court litigation over the warrant's validity. The Secretary's counsel even characterized the delay as obstructive. But

the Secretary also conceded that with a six-month limitations period applicable from the time of the incident (March 26, 2021), the statute of limitations for an administrative citation based on a violation of OSH Act safety regulations likely has already run, notwithstanding the Secretary's unsuccessful efforts to toll that limitations period by filing its motion to toll (D.E. 33) nine days after the district court stay and once the Anthony Marano notice of appeal (D.E. 30) was already on file.

Moreover, 21 months is a long time. The Court has little reason to believe that the conditions in place at the Anthony Marano plant in March 2021, or for that matter on July 28, 2021, as set forth in the initial application for the inspection warrant, are substantially the same as today. At the December 20, 2022 hearing, the Secretary argued that despite that passage of time, the inspection called for by the warrant could reveal specific evidence of existing, ongoing violations of OSH Act regulations, such as those addressing inadequate training of forklift drivers and unsafe operation of forklifts. The Secretary also argued that the forklift in question, which was to be preserved by court order, could be inspected, but the Secretary could not affirm that the forklift would be in substantially the same condition as it was in March 2021. The Court found all of these arguments unpersuasive, in that they appeared based heavily on speculation and not on specific evidence of a *currently existing* violation. The Secretary's July 28, 2021 warrant application cleared the administrative probable cause hurdle for whether a violation existed at that time based on the reported March 2021 forklift accident, but the Court cannot find that in December 2022, the same application continues to set forth adequate administrative-level probable cause, i.e., specific evidence of an existing violation. In short, the administrative inspection warrant issued on July 28, 2021 is now stale.

For that reason, the Court on its own motion quashes the warrant.

## CONCLUSION

The Court possesses jurisdiction under 28 U.S.C. § 636(a)(1) over the administrative inspection warrant (D.E. 1) and orders the warrant quashed as stale. Several motions remained pending in this matter as of the December 20, 2022 hearing. The first is the Secretary's motion to lift the stay of the warrant and to toll the statute of limitations for an administrative citation that the Secretary might lodge relative to the complaint that gave rise to the warrant. (D.E. 33.) The magistrate judge has jurisdiction to decide that motion under Section 636(a)(1) for the reasons stated in Part I above, but insofar as the Secretary directed it at the emergency district judge during Anthony Marano's earlier emergency appeal in the district court, the magistrate judge recommends that the district court deny the motion (and the Anthony Marano motion for leave (D.E. 44) to supplement its response to that motion) as moot, as the warrant now is quashed. The Secretary also filed, after the Seventh Circuit's release of its October 18, 2022 opinion but before its issuance of the mandate, a motion for orders to be entered on the then-pending motions in this matter. (D.E. 45.) The Court denies that motion as moot, now that the Court is acting on all pending motions, including the Contempt Certification Motion. The Contempt Certification Motion is within the magistrate judge's jurisdiction under 28 U.S.C. § 636(e)(6)(B)(iii), and the magistrate judge will address that motion separately after further briefing as ordered by the Court.

**SO ORDERED.**

ENTER:

GABRIEL A. FUENTES
**United States Magistrate Judge**

**DATED: December 22, 2022**

25