**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| ESTABLISHMENT INSPECTION OF: | ) | |
| | ) | Case No. 21 M 499 |
| ANTHONY MARANO COMPANY, | ) | |
| 3000 S. Ashland Avenue, #100, | ) | Magistrate Judge Gabriel A. Fuentes |
| Chicago, IL 60608 | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the cross-motion by Acting Secretary of the U.S. Department of Labor

("the Secretary")[1] for a certification of civil contempt by Anthony Marano Company ("Anthony

Marano" or "AMC") and two of its officers, Torre Palandri and Jason Nitti. ("Contempt Motion";

D.E. 12.) The Secretary filed the Contempt Motion in August 2021, after the Secretary sought

unsuccessfully to execute the administrative inspection warrant in this matter. The inspection

warrant authorized the Secretary, in furtherance of the Secretary's duties to enforce the

Occupational Safety and Health Act of 1970 ("the OSH Act"), 29 U.S.C. §§ 651-678 (1970), to

conduct an inspection at the Anthony Marano facility on the South Side of Chicago, based on a

complaint of a workplace injury said to have occurred in March 2021. Application ("Appl."; D.E.

1). When the Secretary's agent arrived at the Anthony Marano facility on August 2, 2021, with

the administrative inspection warrant in hand and in the company of two deputy U.S. marshals,

the Secretary did not carry out the search. The Secretary bases the Contempt Motion on a

contention that Anthony Marano, Palandri, and Nitti ("the Putative Contemnors") actively defied

the warrant and thus prevented the search from proceeding, Supp. Br. at 8, whereas the Putative

---

[1] The Secretary advises that upon the departure from office by Martin J. Walsh, the current Acting Secretary, Julie A. Su, is substituted as a party in this matter. Secretary's Supplemental Brief ("Supp. Br."; D.E. 57) at 1 n.1; Fed. R. Civ. P. 25(d).

Contemnors contend that the Secretary voluntarily abandoned its attempt to conduct the administrative inspection in the face of the Putative Contemnors' "request" that the inspection team leave the Anthony Marano premises. Anthony Marano Company's Response to the Secretary's Supplemental Brief ("Resp."; D.E. 60) at 1, 5-6. The Secretary has framed the Contempt Motion as a request for certification of facts in support of a civil contempt, and not a criminal one. Contempt Motion at 14-15; Supp. Br. at 6, 15-16.

## BACKGROUND

This matter already has generated a memorandum opinion by the magistrate judge in August 2021 (8/20/21 Order, D.E. 21; *In re Establishment Inspection of Anthony Marano Co.*, 556 F. Supp. 3d 890 (N.D. Ill. 2021) ("*Anthony Marano I*") (denying, by the magistrate judge, Anthony Marano's motion to quash and to stay execution of the inspection warrant)); an opinion by the U.S. Court of Appeals for the Seventh Circuit (*In re Establishment Inspection of Anthony Marano Co.*, 51 F.4th 722 (7th Cir. 2022) ("*Anthony Marano II*") (dismissing Anthony Marano's appeal of district court's affirmance of magistrate judge's denial of motion to quash and to stay, for want of appellate jurisdiction)); and a second memorandum opinion and order by the magistrate judge after dismissal of the appeal (12/22/22 Order, D.E. 53; *In re Establishment Inspection of Anthony Marano Co.*, ___ F. Supp. 3d ___, No. 21 M 499, 2022 WL 17850428 (N.D. Ill. Dec. 22, 2022) ("*Anthony Marano III*")). The underlying facts are recited in those three opinions in significant detail, so we focus below on the facts relevant to the Contempt Motion. The only sworn evidence presented to the Court in support of the Contempt Motion is the sworn written application for the warrant by the Secretary's inspection agent, Eloise Minett-Jackson, a compliance safety and health officer with the Occupational Safety and Health Administration ("OSHA"), Appl., and Minett-Jackson's sworn declaration submitted with the Contempt Motion. Declaration of Compliance

Safety and Health Officer Eloise Minett-Jackson ("Minett-Jackson Decl."; D.E. 13). Anthony Marano also filed with the Court a digital video exhibit depicting the Secretary's attempt to execute the warrant at Anthony Marano's facility on August 2, 2021. 8/2/21 Video (D.E. 15). The accuracy of the 8/2/21 Video, which is cited by the Secretary, Secretary's Reply in Support of Her Cross-Motion for Certification of Contempt ("Reply"; D.E. 62) at 2-3, is not disputed. The facts in the summary below are drawn from Minett-Jackson's sworn statements in the Application and Declaration, and from the 8/2/21 Video.

The Secretary's investigation of workplace safety conditions at Anthony Marano's facility began after OSHA received a telephonic complaint on July 7, 2021, from a person OSHA considers "a government informant." Appl. ¶ 3. The Secretary described the complaining individual as "one of AMC's current employees who was knowledgeable about specific hazardous conditions at AMC's worksite." *Id.* The Secretary's record of the employee's complaint was dated July 9, 2021, and related the following:

> On or about March 26, 2021, at approximately 12:39 PM, Driver #1 was cleaning up debris in the loading dock area when Driver #1 was struck in the back by a forklift, which was operated in reverse. Driver #1's head hit the vertical side post of the rear end of a trailer. Driver #1 was transported by EMS to a local hospital and treated for head, neck, and back injuries.

*Id.*, Exh. A. The Secretary sought an administrative inspection warrant based on an assertion that the foregoing complaint constituted specific evidence of an existing violation of the OSH Act and regulations promulgated under that Act, including 29 C.F.R. § 1910.178, "specifically the regulations on safety requirements relating to operation and maintenance of powered industrial vehicles, including forklifts," as well as the Secretary's "Emphasis Program for Powered Industrial Vehicles." Appl. ¶¶ 5-7, 18 & Exhs. B, C.

The magistrate judge approved the inspection warrant on July 28, 2021, finding that the Application satisfied the level of administrative probable cause set in *Marshall v. Barlow's*, 436 U.S. 307 (1978), for administrative inspection warrants. As the magistrate judge explained in later denying an Anthony Marano motion to quash the administrative inspection warrant:

> The probable cause formulation of *Barlow's*, as we have said, is a lesser standard than in criminal cases …. The reasonable inferences to be drawn from the specific facts in the Warrant Application are not complicated, the most obvious being that the forklift was being operated in reverse (based on the fact that the rear of the forklift struck the driver) and in close proximity to a trailer (which also injured the driver) at a time when the injured driver was engaged in the act of cleaning up debris on the loading dock and thus may not have been in a position to observe the rear of the forklift moving toward him or her. The driver was struck for one or more possible reasons, many of which, alone or in combination, would have represented an existing violation of the regulation and would have called for an inspection under the reasonable legislative or administrative standards arising from the emphasis plan attached to the Warrant Application, including: the driver was too close to the forklift during its operation in a loading area; if the driver was not operating the forklift at the time of the injury and the forklift was unattended, the brakes were not applied or the controls were not neutralized to prevent the forklift from moving in the loading area; if the driver was injured while the forklift was being operated by a second driver, the second driver was not paying adequate attention to the direction and speed at which the forklift was traveling in reverse; the injured driver was not in a position in which he or she could easily have avoided impact with the rear-traveling forklift because the injured driver was cleaning up debris on the dock and might have faced in another direction or downward at the floor; if a second driver was operating the forklift at the time, the second driver was not adequately trained to halt operation of the forklift when other workers are cleaning up the loading dock and might be more vulnerable to an impact with the forklift, particularly when it is being operated in reverse so that the operator might be less able to see other workers in the forklift's path; if no one was at the controls and the forklift had been operated by the injured driver before he or she began cleaning up debris in the loading area, the injured driver was not adequately trained to prevent this type of incident; and/or the loading area was too cramped or did not allow an adequate amount of space between the operating forklift and the ongoing activities of other workers in the same loading area. The injury occurred recently enough to allow a reasonable inference that unsafe conditions contributing to it had not changed. All of the foregoing inferences were reasonable.

> Anthony Marano might prefer an inference that the injury resulted from a simple accident, and that accidents sometimes happen in the absence of existing violations of workplace safety regulations promulgated by the Department of Labor under the Act. But the Seventh Circuit described the Fourth Amendment threshold for administrative inspections as whether the warrant application supports a

> "*reasonable belief*" or leads to a "*reasonable suspicion*" that the Act or its regulations were violated …. And the magistrate judge was reasonable in inferring that the March 26 injury involving a backward-moving forklift supported a reasonable suspicion that something was amiss at Anthony Marano, and that under the lessened administrative probable cause standard of *Barlow's*, an administrative inspection was justified.

*Anthony Marano I*, 556 F. Supp. 3d 908-11 (emphasis in original), citing *In re Establishment Inspection of Midwest Instruments Co.*, 900 F.3d 1150, 1153 (7th Cir. 1990). The district court, on Anthony Marano's emergency motion to quash the administrative inspection warrant, reached a similar conclusion:

> The Court agrees and accepts that there is probable cause for the warrant at issue in light of a telephonic complaint lodged against AMC on July 7, 2021 (Dkt. 25 3-4). AMC offers no evidence or case law tending to show that the complaint – which pertained to an AMC employee suffering bodily injuries from a forklift accident – was insufficient to show probable cause.

8/24/21 Order (D.E. 29).[2]

---

[2] This Court recites the administrative-level probable cause basis for the inspection warrant, as articulated earlier by the magistrate judge and then by the district judge, in view of Anthony Marano's reliance on a judicial remark made during Seventh Circuit oral argument in the now-dismissed Anthony Marano appeal. *See* Resp. at 14-15 (reciting comment that "the probable cause here is I think as thin as it could possibly be. It's just literally one sentence," and stating that "Judge Kirsch certainly saw the merits in Anthony Marano's probable cause challenge ….") The Court appreciates that on the Contempt Motion, Anthony Marano is not re-litigating its earlier challenge to probable cause and warrant validity, *id.*, passim, but rather is arguing that Anthony Marano brought that challenge in good faith. The Court merely cautions against quoting Judge Kirsch out of context. The Seventh Circuit ultimately chose not to reach or even comment upon Anthony Marano's probable cause challenge to warrant validity. *See Anthony Marano II*, 51 F.4th at 735 n.43 ("we have no occasion to comment or rule upon AMC's other arguments concerning whether the warrant was supported by probable cause"). Accordingly, the appellate record does not tell us more about what consideration the Seventh Circuit gave to the probable cause issue, although we naturally would assume that if the Seventh Circuit had reached that issue, the court of appeals would have taken its usual thorough and conscientious approach to reviewing the probable cause determinations made in the district court. For the record, the July 9, 2021, OSHA summary of the then-current Anthony Marano employee's workplace safety complaint was not "just one sentence," and nor were the two analyses, by the magistrate judge and the emergency district judge, of whether the Application and the reasonable inferences to be drawn from it were "enough" to establish administrative-level probable cause under *Barlow's*. *See Anthony Marano I*, 556 F. Supp. 3d at 909-12 (referring to the common-sense nature of probable cause determinations under the totality of the circumstances, including the lessened probable cause standard in *Barlow's* amid "the backdrop of a regulatory scheme based on a policy of preventing workplace injuries" and Seventh Circuit precedent upholding administrative-level probable cause determinations based on applications that were not "a model of specificity and clarity"), citing *Midwest Instruments*, 900 F.2d at 1153, and *Burkhart Randall Div. of Textron, Inc. v. Marshall*, 625 F.2d 1313, 1319 (7th Cir. 1980).

The decisions by the magistrate judge and the emergency district judge denying the Anthony Marano motions to quash came after the events relevant to the Contempt Motion, namely the Secretary's unsuccessful attempts to execute the inspection warrant. The first attempt, which is less relevant if at all to the Contempt Motion, occurred on July 9, 2021, when Minett-Jackson went to the Anthony Marano facility at 3000 S. Ashland Ave. in Chicago to conduct a warrantless administrative inspection but was turned away and told she "would need a warrant to conduct the inspection." Minett-Jackson Decl. ¶ 4. The second attempt, and the one at the center of the events giving rise to the Contempt Motion, occurred on August 2, 2021, five days after issuance of the inspection warrant. Minett-Jackson went to the Anthony Marano facility, warrant in hand, with an OSHA assistant area director and two federal marshals. *Id.* ¶ 8-9. Upon presenting the inspection warrant at a parking lot security gate, the OSHA representatives and the marshals proceeded to the parking lot, parked their vehicles, and exited their vehicles. *Id.* ¶ 9.

> Jason Nitti, Vice President of Operations for AMC, met us outside and told us he was denying us entry into the building. Torre Palandri, Chief Operations and Financial Officer for AMC, joined us outside shortly after our arrival and also informed us that they were denying us entry. I handed Mr. Nitti a copy of the inspection warrant. Mr. Nitti contacted AMC's attorney by phone. While waiting for AMC's attorney to arrive, Mr. Nitti continued to refuse us entry to conduct the inspection and began video recording us on his phone …. Shortly thereafter, AMC's attorney Rob[ert] Marcus arrived on site and also informed us that they were denying us entry and would be filing a motion to quash the warrant. After we conferred with our attorney at the U.S. Department of Labor, we left the premises.

*Id.* ¶¶ 9-12.

The 8/2/21 Video showing the encounter at Anthony Marano's facility lasts 13 minutes and 37 seconds, and the Court has reviewed it carefully. The video begins with a discussion between Anthony Marano and the OSHA inspection team outside a green door with the letter "A" emblazoned on it, as the sound of traffic from the nearby Stevenson Expressway hums in the background. The video shows the acts and statements of six persons: OSHA inspector Minett-

Jackson; a superior of hers named Michael Taylor, an OSHA assistant area director; two deputy marshals named Blake and Brejc; and Nitti and Palandri. Nitti is doing the video recording. On the other side of the green door, boxes of produce sit on pallets underneath dim, fluorescent ceiling lights. Parts of the video are inaudible, but enough is audible to make a few issues clear. The Court will not summarize the entire video, but below we discuss portions of the video of importance to the outcome of the Contempt Motion:

- *Nitti and Palandri tell the OSHA inspection team that Anthony Marano is denying the team access to the facility to allow time for the Anthony Marano attorney, Marcus, to arrive, and that they are acting at the direction of their employer and on the advice of Marcus.* Palandri tells the inspection team at 3:28 of the video: "(Inaudible) we're not going to go into the building until our attorney is here, because (inaudible) even though they have a warrant …. We don't want anybody in the building, we're gonna wait until our attorney gets here and then we can do whatever we want." Palandri also states, during the video, "you have to wait until our attorney gets here." Says Nitti: "And I am able to deny you access to this building …. Our attorney has to be present. He is on his way …. We cannot access the building without him being present …. Attorney advises us to deny entry, so we're doing so, unfortunately." After Minett-Jackson tells Nitti that "we came back with a warrant and now you are still denying entry," Nitti, interrupting, states "our attorney needs to be present, yes." Nitti also tells Minett-Jackson: "(inaudible) it's a normal procedure for us, or we, obviously we don't, uh, we don't, uh, disagree with you, we just want to do as we're, we're asked."

- *Nitti and Palandri repeatedly and emphatically deny the inspection team access to the plant.* No ambiguity lies in the statements Nitti and Palandri make about denying the team access to the inside of the plant, and at no point in the video does either Nitti or Palandri frame these denials as a "request" or even use that word. In addition to the above-recited statements, Nitti states: "Actually, no, you are denied access. I am denying you access currently. You cannot enter our building …. Again, I'm denying access to our building. I am just letting you know this is being videotaped. I am not acc – you are not allowed in our building. I am denying you access." After Minett-Jackson tells Nitti that "we have a legal warrant here," Nitti, interrupting her in mid-sentence, makes the statement, recited also above: "And I am able to deny you access to this building." At times when Deputy Marshals Blake and Brejc have crossed the threshold of the green door, Nitti makes the following statements to them, respectively: "Ma'am, I'm denying you access. I know you are with the U.S. Marshals Service …. I'm sorry, sir, I am denying you access …. Again, we are denying you access, you are not allowed in our building." Palandri at one point motions for the two marshals to step outside, and he and Nitti also tell the team that they have "nothing personal" against the inspection team but need to keep the green door closed for the safety of refrigerated food inside. Advised by Deputy Marshal Blake that the inspection team "go[es] by the court order, we went before the judge," Nitti replies,

"Beautiful, thank you." Asked by Blake whether the Anthony Marano attorney had told Nitti "why he was denying us entry," Nitti does not deny that the inspection team was being denied entry and says, "No, he did not. No." When Taylor and Minett-Jackson state that being denied entry to a facility is a new experience for them, Nitti again does not deny that they are being refused entry and is heard stating, "Sorry."

- *The senior member of the OSHA inspection team said that "[t]hey have a constitutional right to deny entry."* The video shows the group of six persons waiting and conversing outside the green door for several minutes, in expectation of the arrival of Anthony Marano attorney Marcus. At one point on the recording, the inspection team is heard discussing its ordinary search protocol, and Deputy Marshal Blake directs a question at Minett-Jackson and Taylor: "So it makes you wonder, like, so why would they deny you guys access? Is there something you (inaudible) seen?" Taylor replies, at 10:57 of the video: "They have a constitutional right to deny entry, but we do have a warrant, so."

The 8/2/21 Video does not show the arrival of attorney Marcus. According to Minett-Jackson's sworn declaration, Marcus "arrived on site and also informed us that they were denying us entry and would be filing a motion to quash the warrant." Minett-Jackson Decl. ¶ 11. "After we consulted with our attorney at the U.S. Department of Labor, we left the premises." *Id.* ¶ 12.

Two days later, on August 4, 2021, Anthony Marano filed a motion to stay and to quash the inspection warrant. Emergency Motion to Stay Warrant ("Em. Motion to Stay"; D.E. 4). The magistrate judge stayed the inspection warrant temporarily, while the Anthony Marano emergency motion was pending, ordering that "during consideration of the motion to stay, the DOL [Department of Labor] is ordered to take no further steps to execute the administrative inspection warrant at Anthony Marano's facility …." 8/4/21 Order (D.E. 8). Anthony Marano filed another motion to quash on August 10 (D.E. 18), and its motions to quash and to stay remained pending until the magistrate judge denied them on August 20, 2021. (D.E. 20, 21.) On August 23, the magistrate judge made clear that no stay of the inspection warrant remained in effect and would not be in effect "unless and until a higher court issues a stay." (D.E. 23.) The emergency district judge subsequently granted Anthony Marano's oral motion to stay during a telephonic oral argument on August 24. 8/24/21 Tr. (D.E. 34) at 16; 8/24/21 Order (D.E. 29).

After the Seventh Circuit dismissed for want of jurisdiction Anthony Marano's appeal of the district court's denial of the motions to quash the administrative inspection warrant (D.E. 46, 47, 49), the magistrate judge held a hearing on staleness and quashed the warrant as stale on December 20, 2022, per the memorandum opinion noted above as *Anthony Marano III*. (D.E. 51, 53.) During the pendency of the appeal, the OSH Act's statutory six-month limitations period on administrative citations as to the alleged March 26, 2021, accident at Anthony Marano's facility had already run. Supp. Br. at 2, 4. After the magistrate judge quashed the warrant as stale, the Contempt Motion remained pending, and the magistrate judge ordered supplemental briefing, which was completed on March 21, 2023. (D.E. 57, 60, 62.)

The Court has considered the Contempt Motion, the supplemental briefing, the two sworn statements by Minett-Jackson, and the 8/2/21 Video in deciding whether to certify facts per the Secretary's request in the Contempt Motion.

## ANALYSIS

The Contempt Motion is before the Court not on referral per 28 U.S.C. § 636(b), but under the magistrate judge's statutory authority to certify facts to the district court in any proceeding under Section 636(a), of which this is one,[3] upon commission of an act that constitutes a civil contempt. 28 U.S.C. § 636(e)(6)(B)(iii). In Part I below, the Court reviews the jurisdiction and discretion of the magistrate judge to hear the Contempt Motion and to certify the facts as requested by the Secretary. In Part II, the Court will analyze whether, in its discretion, the Court should grant the Contempt Motion by certifying facts to the district court.

---

[3] In *Anthony Marano III*, the Court explained at length why this matter arose under the magistrate judge's jurisdiction per Section 636(a)(1), and not referral jurisdiction. 2022 WL 17850428, at *3-8.

I.      **The Contempt Motion Is Within the Magistrate Judge's Section 636(e)(6)(B)(iii) Jurisdiction, Which Affords the Magistrate Judge Discretion Concerning Whether To Certify Facts for the Severe Remedy of Civil Contempt.**

Neither party has questioned that the magistrate judge has jurisdiction over the Contempt Motion, but we note our source of jurisdiction in any event. The contours of that jurisdiction, and the discretion it affords the magistrate judge on a contempt certification motion, are worth further discussion.

Section 636(e)(6)(B)(iii) provides magistrate judges with limited authority in cases of civil contempt. The magistrate judge may do no more than "forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified." 28 U.S.C. § 636(e)(6). The magistrate judge does not conduct a contempt hearing and does not determine that any person is held in contempt; the power to hold a person in contempt is vested "exclusively in the hands of Article III judicial officers," and this limitation on the authority of the magistrate judge in a contempt proceeding "serves to limit the ultimate exercise of judicial power to persons enjoying the constitutional guarantee of independence." *Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037, 1044 (7th Cir. 1984). Under Section 636(e), the magistrate judge may certify facts to the district court if, in the magistrate judge's discretion, a civil contempt occurred. *See NLFC, Inc. v. Devcom Mid-America, Inc.*, No. 93 C 609, 1994 WL 188478, at *2, 9 (N.D. Ill. May 11, 1994) (citing 28 U.S.C. § 636(e) as setting forth procedure for a magistrate judge's certification of facts "when a person has committed an act which may constitute a contempt," and exercising discretion not to certify facts or issue a show-cause order for civil contempt).

10

The Contempt Motion states clearly that it seeks a certification of facts establishing a civil contempt, and not criminal contempt. The distinction is important, because much of the focus of the Secretary's briefing is on how the Putative Contemnors' resistance to the administrative inspection warrant represented an affront to the Court's authority and operated to defeat the Secretary's ability to enforce the Act in this matter by causing the warrant to go stale and by running out the limitations period on any administrative citation the Secretary might have lodged concerning the March 2021 forklift accident at the Anthony Marano plant. *See* Supp. Br. at 2. As Anthony Marano's brief noted, the Court stated previously at oral argument on the Contempt Motion that Anthony Marano's efforts to obtain federal judicial review of the inspection warrant before its execution, and the subsequent Seventh Circuit appeal, tactically defeated the Secretary's enforcement effort here and even was the product of "deft" lawyering that "delivered results." Resp. at 15, quoting 12/20/22 Tr. (D.E. 59) at 18, 26. But in a further comment not quoted in the Anthony Marano brief, the magistrate judge added that "the question is what consequence may flow from that." 12/20/22 Tr. at 26.

A criminal contempt remedy would be punitive and designed to vindicate the Court's authority in issuing an inspection warrant that lawfully authorized the inspection at the Anthony Marano plant. *See Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir. 1981). But the civil contempt sought here by the Secretary is remedial and not punitive, "its purpose being either enforcement of a prior court order or compensation for losses or damages sustained as a result of noncompliance with the provisions of the order at issue." *Id.*, citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *see also United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001) ("Sanctions for civil contempt are designed either to compel the contemnor into compliance with an existing court order or to compensate the complainant for

losses sustained as a result of the contumacy."). The Secretary is under no illusions about the compensatory nature of the civil contempt relief sought here. *See* Supp. Br. at 11-12 (noting that in the wake of the Court's having quashed the inspection warrant as stale, "the Secretary can only seek compensatory sanctions" in the form of "(1) compensation for [the] loss of ability to conduct the inspection and enforce the OSH Act; and (2) [] attorneys' fees in connection with enforcing the inspection warrant and responding to each of AMC's unsuccessful attempts to challenge the inspection warrant."). More specifically, the Secretary seeks compensation for the lost enforcement opportunity by being paid the unknown (but perhaps determinable through court order) amount of legal fees Anthony Marano incurred for the "tradeoff" of not having to endure the inspection. *Id.* at 13. The Secretary also wants additional compensation in the form of the attorney fees the Secretary incurred in responding to Anthony Marano's legal challenges to the inspection warrant. *Id.* at 14-15.

To establish civil contempt, the Secretary must demonstrate by clear and convincing evidence that the Putative Contemnors violated "the express and unequivocal command of a court order." *FTC v. Trudeau*, 579 F.3d 754, 763 (7th Cir. 2009). Courts presented with civil contempt motions commonly consider whether: (1) the court order in question was clear and unambiguous; (2) the alleged contemnor violated the order; (3) the violation was significant, in that it did not substantially comply with the order; and (4) the contemnor failed to take steps to reasonably and diligently comply with the order. *Id.*

The contempt power is among a court's inherent powers. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). But "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* Civil contempt is "a severe remedy" that "'should not be resorted to where there is a *fair ground of doubt* as to the wrongfulness of the defendant's conduct.'" *Taggart*

12

*v. Lorenzen*, ___ U.S. ___, 139 S. Ct. 1795, 1801-02 (2019), quoting *Calif. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885) (emphasis added in *Taggart*).  *See also Fidelity and Deposit Co. of Maryland v. TRG Venture Two, LLC*, No. 19 C 389, 2019 WL 5208853, at *6 (N.D. Ill. Oct. 16, 2019) (reversing, on bankruptcy appeal, the bankruptcy court's determination of civil contempt where bankruptcy court had not expressly considered whether there was a "fair ground of doubt" as to whether the putative civil contemnor's conduct might be lawful).

## II.     The Court Will Decline To Certify Facts in Support of Contempt in This Matter.

The Court has no doubt that the inspection warrant was valid and lawful, and that its grant of authority to the Secretary to conduct the inspection at the Anthony Marano plant was clear and unequivocal.  Yet whether a fair ground of doubt exists as to the wrongfulness of the conduct of Nitti and Palandri as individuals, and of Anthony Marano as an entity, is less clear.

### A.  Nitti and Palandri Prevented the OSHA Inspection From Proceeding, But Only Until Marcus Arrived, Creating a Fair Ground of Doubt As To The Wrongfulness of Nitti's and Palandri's Conduct in Their Personal Capacity.

As a preliminary matter, we note that the facts, as proved by the 8/2/21 Video, show that Nitti and Palandri did rebuff the OSHA inspection team's effort to execute the warrant upon the team's arrival at the Anthony Marano plant.  In the briefing, Anthony Marano contends that no disobedience of a court order occurred on August 2, 2021, because the Anthony Marano representatives merely "requested" that OSHA leave the premises, whereupon OSHA voluntarily "chose to leave" and "chose to never return."  Resp. at 1.  The Court rejects this argument out of hand.  As the 8/2/21 Video shows, Nitti and Palandri repeatedly and specifically told the OSHA inspection team that they were being denied access, that they were not being allowed into the plant, and that the two marshals who had stepped across the threshold of the green door were required to step back across the threshold and wait outside in the August sun.  Nitti and Palandri did not

13

"request" OSHA to do anything, so the video establishes that this contention is no less than absurd. The evidence in the record shows that OSHA left the premises after waiting for attorney Marcus to arrive and then being told by Marcus, on his arrival, that OSHA would not be allowed inside, as Anthony Marano planned to move to quash. Minett-Jackson Decl. ¶¶ 11-12. Marcus, acting as Anthony Marano's agent, definitively barred OSHA from the plant – not Nitti or Palandri.

The 8/2/21 Video shows that Nitti and Palandri stated that they were requiring OSHA merely to wait until Marcus's arrival in a matter of minutes, whereupon, Palandri said, "we can do whatever we want." That statement reasonably may be interpreted as informing OSHA that Nitti and Palandri were not the final word on admitting OSHA to the plant and that the inspection could proceed once Marcus arrived. Nitti and Palandri (and Marcus) may have had other plans; Nitti and Palandri may have intended to stall OSHA at the door so that Marcus could arrive and then continue to deny access. But the Court has insufficient evidence before it to support that inference. So although the evidence in the record shows that OSHA was denied entry upon the arrival of Marcus, clear and convincing evidence does not show that disobedience of the warrant by Nitti and Palandri for a matter of minutes before Marcus arrived was sufficiently significant to support a finding of civil contempt against them. In addition, as emphatic and persistent as Nitti and Palandri were in telling the OSHA team it could not enter the Anthony Marano facility, the 8/2/21 Video establishes that Nitti and Palandri, against whom the Secretary seeks a civil contempt in their individual capacities, stated repeatedly that they were acting under the instructions of their employer, Anthony Marano, and its attorney, Marcus. Thus, the Court sees at least a fair ground of doubt as to the wrongfulness of their actions at the green door, and the Court declines to certify facts for a contempt as to Nitti and Palandri or order them to show cause, in their personal capacity. *See GCM Partners, LLC v. Hipaaline Ltd.*, No. 20 C 6401, 2021 WL 1526669, at *10-11 (N.D.

14

Ill. Apr. 19, 2021) (finding fair ground of doubt as to putative civil contemnor in her personal capacity where evidence of the allegedly wrongful conduct stemmed from her actions as a corporate officer), *appeal docketed*, No. 22-2586 (7th Cir. Sept. 9, 2022).

### B. Anthony Marano Barred OSHA from Conducting the Inspection, But the Court Finds a Fair Ground of Doubt As To the Wrongfulness of Anthony Marano's Conduct Based on the Facts Here.

Unlike Nitti and Palandri, Anthony Marano did make the final decision to prevent the OSHA inspection from occurring. According to the record evidence, OSHA did not leave until Anthony Marano's attorney, Marcus, arrived and "informed us that they were denying us entry and would be filing a motion to quash the warrant." Minett-Jackson Decl. ¶¶ 12-13. Unlike Nitti and Palandri, Marcus said nothing to indicate or suggest that the inspection might proceed at some point. The Court reasonably infers from the Minett-Jackson Declaration that the word of Marcus, as Anthony Marano's attorney and agent, was indeed the final word from Anthony Marano, which was that under no circumstances would the OSHA inspection proceed, notwithstanding the warrant, which Anthony Marano planned to seek to quash. But that is not the end of the Court's inquiry here.

In the briefing, the parties make much of Anthony Marano's intent in barring entry. The Seventh Circuit and other courts have given mixed signals about the relevance of the resisting party's "good faith" for purposes of a contempt analysis. *Compare In re Federal Facilities Realty Trust*, 227 F.2d 657, 658 (7th Cir. 1955) (stating that although a damages award in a civil contempt case is compensatory only, "the willfulness inherent in the contemptuous act is a major consideration in determining whether attorney's fees should be awarded to the opposing party") *and Commodity Futures Trading Comm'n*, 655 F.2d at 784-85 & n.11 (stating that although "[g]ood intentions cannot sterilize conduct otherwise contemptuous," an award of expenses and

fees in civil contempt proceedings is "independent of any award of compensatory damages") *with In re Establishment Inspection of St. Charles Mfg. Co.*, 663 F. Supp. 310, 313 (N.D. Ill. 1987) ("because such relief is generally considered remedial in nature, the question of whether civil contempt was willful or not is irrelevant to the decision to award fees"). We do not reach the question of whether Anthony Marano's denial of access to its plant on August 2, 2021, was willful or whether willfulness is relevant at all. Instead, we are interested only in whether contempt facts may be certified as to Anthony Marano, or whether a fair ground of doubt exists as the wrongfulness of its acts.

We see a fair ground of doubt, although not as to Anthony Marano's non-compliance with the clear and unequivocal Court-issued inspection warrant, as it clearly did not comply. Rather, the fair ground of doubt arises when we look at the degree to which Anthony Marano's failure to comply with the warrant was a "significant" violation of the Court's order, and the degree to which Anthony Marano failed to take steps to reasonably and diligently comply with it. *See Trudeau*, 579 F.3d at 763. The 8/2/21 Video shows, and the Secretary admits, that the OSHA inspection team walked away after Marcus told them that Anthony Marano was planning to file a motion to quash. Minett-Jackson Decl. ¶¶ 11-12. Nitti's 8/2/21 Video also captured OSHA's Taylor stating, within earshot of Nitti, that "[t]hey have a constitutional right to deny entry." The context of that statement might yield several reasonable interpretations, but one of them is that Taylor was referring specifically to Anthony Marano having a constitutional right to deny the OSHA inspection team entry into the plant. The Secretary insists that the inspection team members walked away because Anthony Marano turned them away, Reply at 1, but the record shows not only that OSHA did not use "force" to conduct the inspection, but that OSHA failed even to inform Marcus that Anthony Marano had no lawful basis to obstruct the inspection, no meritorious ground

16

for a motion to quash the warrant, and no ability to obtain federal judicial review at this stage of the investigation. The OSHA team did not tell Anthony Marano that despite the company's protestations and promises of a motion to quash, the inspection would proceed, with OSHA and the U.S. Marshals Service reserving all of their rights to take whatever legal action might result from any attempt to stop the team from conducting the inspection.

As it turns out, this Court held that Anthony Marano had no such right of pre-enforcement judicial review, *Anthony Marano I*, 556 F. Supp. 3d at 989-907, and the Seventh Circuit's recent dicta on this subject is not encouraging for Anthony Marano's view that it has such a right. *See Anthony Marano II*, 51 F.3d at 734 n.42. But as of the time of the inspection, as this Court noted, the Seventh Circuit "[had] yet to speak definitively" on whether employers have that right, *Anthony Marano I*, 556 F. Supp. 3d at 894, and Anthony Marano has contended from the outset that the Secretary had no constitutional right to conduct the inspection because the warrant was not valid; Anthony Marano has contended as well that it had to challenge the warrant in court before the inspection to avoid mooting Anthony Marano's right to make such a court challenge. Em. Mot. to Stay ¶ 4, citing *Babcock & Wilcox Co. v. Marshall*, 610 F.2d 1128 (3d Cir. 1979). Moreover, at the green door on August 2, when Anthony Marano, through Marcus, informed OSHA that Anthony Marano would make its court challenge, OSHA backed off, in at least implicit deference to Anthony Marano's contention that it had a right to challenge the warrant's validity before the inspection. This Court's later disagreement with this contention, *Anthony Marano I*, 556 F. Supp. 3d at 906-07, is beside the point. At the green door, the Secretary did not behave as if Anthony Marano's contention that it had a right to a pre-enforcement validity challenge was meritless. Even aside from Taylor's comment that Anthony Marano had a constitutional right to deny entry, the OSHA team's deference to Anthony Marano's assertion of that right could have confirmed, in the

17

mind of a reasonable person, that OSHA's right to enter the plant under the inspection warrant was up for debate. And if OSHA's right to enter the plant – or Anthony Marano's right to deny entry – was up for debate, or if Anthony Marano reasonably thought so, a fair ground of doubt exists as to both the significance of Anthony Marano's refusal to comply with the inspection warrant and Anthony Marano's failure to take steps to reasonably and diligently comply with the order. If Anthony Marano had a pre-execution right to debate warrant validity with the Secretary in a federal court, then reasonable compliance could well include asking a court to require OSHA to hold off on the inspection until the court could resolve Anthony Marano's validity challenge. To be clear, the Court subscribes to none of this premise, *Anthony Marano I*, 556 F. Supp. 3d at 898-907, but at the critical moment at the green door, the OSHA inspection team equivocated.

The Secretary's equivocation about Anthony Marano's right to refuse the inspection continued through the Contempt Motion briefing and further confirms that a fair ground of doubt exists over whether Anthony Marano, for purposes of this Contempt Motion only, acted wrongfully in denying access on August 2, 2021. Even today, the Secretary stops short of asserting that it had a right to enter the plant over Anthony Marano's verbal instructions and objections:

> As a preliminary matter, the Secretary as a civil regulatory enforcement agency *does not have the power to forcibly execute the warrant*, but rather, depends on the U.S. Marshals Service to decide when and how to assist in executing the warrant.

Supp. Br. at 14 (emphasis added). But what other purpose could the OSHA investigative team have had in bringing along two U.S. Marshals, if not to enforce the Court-ordered investigative warrant? In leaving without conducting the inspection once Anthony Marano asserted it would move to quash the warrant, despite the OSHA team's lawful authority to inspect and their practical ability to do so with the aid of the U.S. Marshals Service, together with Taylor's statement which

18

appeared to acknowledge that Anthony Marano had a constitutional right to deny entry, Anthony Marano reasonably could have concluded that it had such a right.

Therefore, the Court finds that there is a fair ground of doubt that Anthony Marano's refusal to comply with the warrant was significant and reasonable under all of the circumstances on August 2, 2021, at the green door. The Court cannot say that the significance and reasonableness of Anthony Marano's noncompliance, in the moment on August 2, establish civil contempt beyond a fair ground of doubt. *See Data Mgt. Assn. Int'l v. Enterprise Warehousing Solutions, Inc.*, No. 20 C 4711, 2022 WL 16856414, at *3-4 (N.D. Ill. Nov. 10, 2022) (applying "fair ground of doubt" standard to deny civil contempt motion alleging violation of a preliminary injunction that court found did not "unequivocal[ly]" command putative contemnor to refrain from using, in its source code, the movant's mark); *Empire Indus., Inc v. Winslyn Indus., LLC*, No. 18 C 698, 2019 WL 2743470, at *3-5 (N.D. Ill. June 30, 2019) (applying "fair ground of doubt" standard to deny civil contempt motion in dispute over whether putative contemnors conspired to violate a preliminary injunction barring the sale of the movant's products, based on "factual uncertainty" surrounding whether there was an agreement to sell the covered product, notwithstanding evidence suggesting that putative contemnors "may have" conspired to do so). In reaching this conclusion, the Court also is mindful of its need to exercise "restraint and discretion" with respect to the inherent judicial power of contempt. *NASCO*, 501 U.S. at 44.

The Court also is not persuaded by the Secretary's contention that Anthony Marano should be subjected to a rule to show cause because of what the Secretary calls the company's "calculated, year-and-a-half-long series of failed legal challenges wherein it repeatedly sought relief from the courts to stay and/or quash the inspection warrant, thereby preventing OSHA from legally executing a valid search." Reply at 1. Although Anthony Marano had no right to pre-execution

federal judicial review of warrant validity in the first place, *Anthony Marano I*, 556 F. Supp. 3d at 898-907, the Court cannot find Anthony Marano's efforts to test that proposition in the federal courts to be "wrongful conduct" that would give rise to civil contempt, under any standard. When Anthony Marano asked the emergency district judge for a stay of the execution of the inspection warrant, a stay to which Anthony Marano was not legally entitled because it had no chance of success on the merits, *inter alia*, *id.* at 907-15, the Secretary did not make a contemporaneous objection to the stay during the telephonic district court hearing, and the district judge stayed the warrant. Once the warrant was stayed by a court, Anthony Marano's resistance to the inspection cannot be said to be contemptuous – instead, the resistance was consistent with the district court stay. OSHA did not make a further attempt to execute the warrant at that point, but nor could it. Anthony Marano lawfully had filed an appeal, which the Seventh Circuit declined to dismiss immediately and then entertained for more than a year before dismissing for want of jurisdiction. Although the appeal lacked merit, Anthony Marano cannot be said to have acted wrongfully or unlawfully by prosecuting it. Anthony Marano pursued a highly aggressive legal strategy, but the Court knows of no precedent, and the Secretary has cited none, for civil contempt findings based on a party pursuing an aggressive but ultimately unsuccessful litigation strategy.

The Court appreciates the Secretary's frustration that Anthony Marano's strategy, while unsuccessful in court, was successful in perhaps the most important respect: Fending off the OSHA inspection and investigation by causing the limitations period to expire. But Anthony Marano's success in that respect is not a ground for civil contempt. Instead, it is proof positive of what this Court said from the beginning: A pre-execution right to federal judicial review of administrative inspection warrants is inimical to the Secretary's ability to enforce the OSH Act and inconsistent with the spirit and letter of the Supreme Court's ruling in *Barlow's*. *Id.* at 899-901. Anthony

Marano managed to run out the clock on the Secretary's investigation in this case, in a raw demonstration of why there can be no right of pre-execution federal judicial review of administration inspection warrants. Anthony Marano now has managed to avoid paying a price, through civil contempt, for having thwarted the investigation in this manner. Perhaps other courts will note this case for how attempts to obtain pre-execution federal judicial review of these warrants operate to stay, delay and defeat the administrative inspections and entire investigations. Perhaps a future employer subject to an inspection warrant will be unable to persuade the OSHA inspection team to leave the facility by threatening to file motions that ought to be denied in any event. But the serious remedy of civil contempt, which courts bring to bear only with restraint and discretion, is not available to the Secretary based on Anthony Marano's having availed itself of the openings it was given by the OSHA team and the federal courts. Under the circumstances and facts of this unusual case, the Court must decline to certify facts that, in the magistrate judge's opinion, do not amount to a civil contempt under the "fair ground of doubt" standard.

Anthony Marano makes various other arguments opposing the Contempt Motion, such as whether the Secretary's compensatory claim for attorneys' fees had to be presented to the magistrate judge by affidavit at this stage of the contempt litigation. The Contempt Motion also presents other questions such as how attorneys' fees of salaried government attorneys, as compensatory damages recoverable in contempt, ought to be measured. The Court reaches none of these other questions, having declined to certify facts and having declined to order Anthony Marano to show cause in the district court.

## CONCLUSION

For the foregoing reasons, the Contempt Motion is denied.

**SO ORDERED.**

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED:  March 30, 2023**